Georgia ANDREWS, Plaintiff–Appellee,

v.

John T. BIBLE, and Paul T. Bible, d/b/a Western Sizzlin of Oak Ridge, Defendants–Appellants.

Supreme Court of Tennessee, at Knoxville.

June 10, 1991.

Mark C. Travis, Wimberly, Lawson & Cobb, Morristown, for defendants-appellants.

Michael W. Ritter, Joyce, Meredith & Flitcroft, Oak Ridge, for plaintiff-appellee.

## OPINION

DROWOTA, Justice.

This appeal concerns the denial by the Circuit Court of Anderson County of a motion for Rule 11 sanctions brought against Georgia Andrews, Plaintiff–Appellee, and her attorney, Michael W. Ritter. The sanctions were sought by John and Paul Bible, Defendants–Appellants, after a workers' compensation action filed against them was voluntarily nonsuited by the Plaintiff. The issues in this case of first impression are (1) whether Plaintiff's counsel performed an objectively reasonable prefiling investigation, factually and legally, comporting with the requirements of Rule 11 and, (2) whether attorneys have a duty under Rule 11 to take remedial action post-filing, once it is discovered that their pleadings, motions, or other papers are ungrounded factually or are legally meritless. Stated another way, do lawyers have a continuing obligation under Rule 11 to review and reevaluate their pleadings, motions, and other papers after filing, and to immediately dismiss, withdraw, or otherwise modify them when subsequent developments render such legally or factually baseless? We hold that there is no such obligation under Rule 11 and that Plaintiff's counsel in the present case performed an adequate prefiling investigation. Accordingly, we affirm the disposition of this case made by the trial court.

The facts in this case are essentially undisputed. In January 1988, Michael W. Ritter filed a workers' compensation action on behalf of his client, Georgia Andrews, Plaintiff herein, against the Defendants, John T. Bible and Paul T. Bible, d/b/a Western Sizzlin of Oak Ridge, in the Circuit Court for Anderson County, Tennessee. The complaint alleged that the Plaintiff sustained a compensable injury in the course of her employment at Wester Sizzlin in Oak Ridge in February, 1987. The Bibles were named as Defendants since they were thought to own the restaurant, as was Wausau Insurance Company, the workers' compensation carrier for the restaurant.

After being served with the complaint, the Bibles contacted attorney Mark C. Travis for representation, and advised him that they had transferred the assets and control of the business under a lease-purchase agreement to an individual by the name of Whitaker. It should be noted that the Bibles were not provided with representation by the insurance company since there was no contractual relationship between them and, thus, they were forced to employ counsel at their own expense. On January 26, 1988, Wausau Insurance Company informed the Bibles' counsel, Travis, that Whitaker was its insured as the owner of the restaurant. On the same day, Travis telephoned Ritter to inform him that the Bibles did not own the Western Sizzlin on the date of the alleged injury to his client. Ritter agreed, upon receipt of documentation confirming the existence of a lease-purchase agreement, to amend the complaint and substitute Whitaker as the owner of the restaurant. This documentation was forwarded with a letter of confirmation approximately two weeks later. The complaint was not amended, however, and the Bibles responded by filing an answer in February 1988. Thereafter, neither counsel communicated with the other for nearly a year.

On January 21, 1989, Travis received notice of a docket sounding in Anderson County set for February 7, 1989. Travis attempted several telephone calls to Ritter but without success. On February 6, 1989, Travis contacted the Anderson County Circuit Court Clerk's office to inquire about the docket sounding scheduled for the following day. He was advised by the Clerk's office that the case had been set for trial on May 31, 1989.

On February 28, 1989, Travis prepared and filed a motion for summary judgment and accompanying memorandum of law on behalf of the Bibles. No response was filed to this motion, and on March 17, 1989, still without any communication from Ritter, Travis called the Clerk's office to have the motion set for a hearing to be held on April 14, 1989. Three days prior to this hearing, Ritter's secretary called Travis to advise him that his client was going to take a voluntary nonsuit without prejudice. After some further negotiation, it was decided that the nonsuit would be taken with prejudice as to John and Paul Bible. The order of nonsuit was entered on April 20, 1989, and on May 19, 1989, the Bibles filed a motion to alter or amend the judgment to include sanctions against Plaintiff's counsel pursuant to Rule 11 of the Tennessee Rules of Civil Procedure.

The trial court, in a memorandum opinion, found that the investigation as to the ownership of the Western Sizzlin was incomplete, or at least resulted in erroneous information prior to filing of the workers' compensation suit. The court also found that subsequent to the filing of the complaint, and after being advised of the true ownership of the business, the conduct of the attorney for the Plaintiff, Ritter, consisted of inaction. However, in his final order the trial court held that the conduct of counsel did not warrant the imposition of sanctions pursuant to Rule 11. Accordingly, the trial court denied the motion for sanctions and this appeal followed.

I.

■ As to the first issue, whether Plaintiff's counsel performed an adequate prefiling investigation comporting with the requirements of Rule 11, he contends that his actions in attempting to ascertain the true ownership of the Western Sizzlin met the

requirements of Rule 11. The claim is made that the Plaintiff was unable to provide the name of the restaurant's owner and contacts with the restaurant itself were unsuccessful. Failing that, counsel telephoned other Western Sizzlin restaurants in the area, but without success. Finally, he telephoned other attorneys in an effort to learn if any had had lawsuits against this particular restaurant. Eventually, Ritter spoke with one attorney who believed that the Bibles were the true owners of the restaurant. This was the sum total of his inquiry into the pertinent facts alleged in the complaint. It appears that Ritter decided against amending the complaint after learning that the true owner, Whitaker, died since the execution of the lease-purchase agreement. The contention is made in this regard that this course of action was necessary to protect the interests of his client since he was unsure of the effect that the death might have on the case itself.

In recent years, Rule 11[1] has generated extensive debate and controversy among jurists, practitioners, and legal writers. *Thomas v. Capital Sec. Services, Inc.*, 836 F.2d 866, 869 (5th Cir.1988). *See generally* Stein, "Rule 11 in the Real World," 132 F.R.D. 309 (1990); "Call for Written Comments on Rule 11," 131 F.R.D. 344 (1990); Miller, "The New Certification Standard under Rule 11," 130 F.R.D. 479 (1990). Certainly, the development of Rule 11 jurisprudence is far more advanced in the federal courts than in the state system because the provision has been a part of the Federal Rules of Civil Procedure since 1938, *Balfour Guthrie, Inc. v. Hunter Marine Transport*, 118 F.R.D. 66, 71 (M.D.Tenn. 1987), in contrast to Tennessee's version of Rule 11 which became law in 1971 as part of the Tennessee Rules of Civil Procedure.

While there have been hundreds, if not thousands, of opinions construing Rule 11 in the federal system, our appellate courts have only once issued a reported opinion on the topic, *Con–Tech, Inc. v. Sparks*, 798 S.W.2d 250 (Tenn.App.1990). *Con–Tech* indicates that in contrast to the federal version of Rule 11 which has been in existence since 1938, Tennessee's Rule 11 was not amended to conform to its federal counterpart until 1987. 798 S.W.2d at 252. It is for this reason that this Court finds it appropriate to examine federal decisional authority concerning the nature of the questions posed by the instant case.

■ The certification which results from the attorney's signature on a motion, pleading, or other document is directed at the three substantive prongs of Rule 11: its factual basis, its legal basis, and its legitimate purpose. Schwarzer, "Sanctions Under the New Federal Rule 11—A Closer Look," 104 F.R.D. 181, 186 (1985). *See also*, Note, "The Intended Application Of Federal Rule of Civil Procedure 11: An End To The Empty Head, Pure Heart Defense," 41 Vand.L.Rev. 343, 361–62 (1988). A signature signifies to the Court that the signer has read the pleading, motion, or other paper, has conducted a reasonable inquiry into the facts and the law, and is satisfied that the document is well-grounded in both, and is acting without any improper motive. *Business Guides v. Chromatic Communications Ent.*, —— U.S. ——, 111 S.Ct. 922, 929, 112 L.Ed.2d 1140 (1991); *Cooter & Gell v. Hart Marx Corp.*, 496 U.S. ——, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). "The essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit. A signature sends a message to the [trial judge] that

---

**1.** The Tennessee version of Rule 11 states in pertinent part: "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief *formed after reasonable inquiry*, it is *well grounded in fact* and is *warranted by existing law* or a good faith argument for the extension, modification, or reversal of existing law, and that it is *not interposed for any improper purpose*, such as to harass or to cause unnecessary

delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." (Emphasis supplied.)

this document is to be taken seriously." *Business Guides,* 111 S.Ct. at 930. The purpose of Rule 11 as a whole is to bring home to the individual signer his personal, nondelegable responsibility. "The message thereby conveyed to the attorney, is that this is not a team effort but in the last analysis, *yours alone,* precisely the point of Rule 11." *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 460, 107 L.Ed.2d 438 (1989). An attorney who signs a paper without the required substantiated belief "shall" be penalized by "an appropriate sanction." This sanction may, but need not, include payment of the other party's expenses. Although the rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, see Advisory Committee notes, any interpretation must give effect to the rule's central goal of deterrence. *Cooter & Gell,* 110 S.Ct. at 2454. *See also,* Note, "The Immediate Appealability of Rule 11 Sanctions," 59 Geo. Wash.L.Rev. 683 (1991) (purpose of Rule 11 is to prevent abusive and dilatory tactics by litigants).

 The test to be applied in deciding whether an attorney's conduct is sanctionable, is one of objective reasonableness under all the circumstances, *Business Guides,* 111 S.Ct. at 933, and the reasonableness of the attorney's belief must be assessed in light of the circumstances existing at the time the document in question was signed. 104 F.R.D. at 189. The Advisory Committee notes to the federal version of Rule 11 state that "[t]he Court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time [of signing]." *Cruz v. Savage,* 896 F.2d 626, 631 (1st Cir.1990). One of the clearest and most succinct explanations of the principles associated with a proper Rule 11 analysis was set forth in *Whittington v. Ohio River Co.,* 115 F.R.D. 201, 209 (E.D.Ky.1987):

1. An attorney must READ every paper before signing it.

2. He must make a reasonable pre-filing investigation of the FACTS.

3. He must research the LAW, unless he is certain he knows it.

4. The law as applied to the facts must REASONABLY WARRANT the legal positions and steps he takes. If existing law does not warrant these positions, a plausible argument for the extension of the law to the facts of the case is required.

5. It must be demonstrated, as the basis of pre-filing investigation and research, that there is a REASONABLE BASIS to name each defendant named, and to support each claim asserted. The shotgun complaint or answer, filed in the hope that discovery will produce the justification for it, is improper.

6. The adequacy of an attorney's investigation, research and legal analysis will be evaluated by the court under an OBJECTIVE STANDARD, namely, whether the attorney acted as a reasonably competent attorney admitted to ... practice. Except as to improper purpose, subjective good faith is not a defense to Rule 11 sanctions. A pure heart but an empty head is of no avail.

\* \* \* \* \* \*

8. An attorney must not have an IMPROPER PURPOSE, such as harassment or intimidation, in naming any defendant, asserting any legal position or taking any legal step.

9. If an attorney violates Rule 11 the imposition of some sanction is MANDATORY, although the nature and extent of the sanction is discretionary with the [trial] court.

With the foregoing principles foremost in mind, we conclude that Ritter made an objectively reasonable pre-filing inquiry into the factual basis of the complaint. From the complaint, it appears that Plaintiff's injury occurred on February 22, 1987. The affidavit of Ritter indicates that he first interviewed his client in reference to her injuries and place of employment in January 1988. This gave him approximately 30 days in which to investigate the case, and prepare and file a complaint in order to toll the statute of limitations found in T.C.A. § 50–6–203. The time available for

an investigation prior to the expiration of a statute of limitations is a factor that obviously should enter into the analysis. Tenn. R.Civ.P. 11, Advisory Commission Comment to 1987 Amendment.

Furthermore, Ritter's client was apparently of little help in determining the true identity of the employer and other information relative to her claim. Counsel's efforts to ascertain the name of the employer were further hampered by the fact that sometime around May, 1987, the Western Sizzlin in Oak Ridge ceased operations and closed. Moreover, during the month that remained before the statute of limitations would expire, counsel's investigation included attempts to contact the restaurant itself, communication with other Western Sizzlin restaurants in the area, and contacts with other attorneys in an effort to learn if any had had lawsuits against this particular restaurant. He also discovered that Whitaker, the purported owner, was dead, and he was unsure of the effect that the death might have on the case. Under the foregoing circumstances, it does not appear that Plaintiff's counsel's prefiling investigation was unreasonable. Although it is true that information concerning the proper name and address of the Plaintiff's true employer could have easily been obtained from the Department of Labor, as suggested by defense counsel, the failure to do so was no more unreasonable than defense counsel's choice of filing an answer as a responsive pleading, rather than a Rule 12.02 motion to dismiss which might have disposed of the matter summarily.

## II.

■ Turning to the question of whether an attorney has a continuing obligation to review and reevaluate signed documents, several federal courts have had the opportunity to ask whether the duties and obligations imposed by Rule 11 continue throughout the litigation. The decisions speculate about whether the attorney who files a paper, motion, or other pleading in compliance with Rule 11, and thereafter discovers that the document is not well-grounded in law or in fact, must take fur-

ther action. Research reveals that the federal intermediate appellate courts are almost in unanimous agreement that Rule 11 is restricted to the signing itself, and does not require revisions to filed documents to conform to newly discovered evidence or subsequent developments.

For example, the Seventh Circuit has held that Rule 11 does not require the updating of papers that were not subject to sanctions when filed because hindsight should not be used to assess the adequacy of pleadings and, further, the official comments to Rule 11 do not indicate that a lawyer continue an investigation after filing or update documents in light of new findings. *Pantry Queen Foods v. Lifschultz Fast Freight*, 809 F.2d 451, 454 (7th Cir.1987); *see also, Hamer v. County of Lake*, 819 F.2d 1362, 1370, n. 15 (7th Cir.1987) (reiterating that Rule 11 does not impose a continuing obligation on attorneys to re-evaluate merits of a signed document as the litigation develops). Interestingly, the Court in *Pantry Queen* did observe, however, that there is an implicit obligation to update because Rule 11 applies to all papers filed during the course of the litigation. "Each filing must reflect the results of reasonable inquiry. Rare is the case that goes from complaint and answer to trial without an intervening filing. Updating occurs in the course of these filings." 809 F.2d at 454.

Similarly, the Ninth Circuit has held that Rule 11 applies only to the signing itself, thereby limiting the scope of the Rule to testing the attorneys' conduct at the time of the signing. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 490 (9th Cir. 1988) ("The fact that claims are later found lacking an evidentiary foundation is irrelevant to the Rule 11 inquiry."). The Third Circuit has likewise indicated that Rule 11 sanctions are proper only in situations which involve signing a paper, and that Rule 11 may not be invoked because an attorney, after discovery has taken place, is unable to produce adequate evidence to withstand a motion for summary judgment. *Teamsters Local Union v. Cement Exp., Inc.*, 841 F.2d 66, 68–69 (3rd Cir.1988). The Eleventh Circuit has also held that Rule 11

imposes no continuing obligations on attorneys, provided the document was in compliance with the Rule to begin with. *Corp. Of The Presiding Bishop v. Assoc. Contractors*, 877 F.2d 938, 942–43 (11th Cir. 1989). The Eighth Circuit has stated that the Rule applies only to signed documents because it "is not a panacea intended to remedy all manner of attorney misconduct occurring before or during the trial...." *Adduono v. World Hockey Ass'n*, 824 F.2d 617, 621 (8th Cir.1987). *See also, Hilton Hotels Corp. v. Banov*, 899 F.2d 40 (D.C.Cir.1990) (appears to be leaning in the direction of finding no continuing duty under Rule 11).

In addition to the Eighth, Eleventh, Seventh, Ninth, and Third Circuits, the Second Circuit has held that the key to Rule 11 lies in the certification flowing from the signature itself because "the Rule refers repeatedly to the signing of papers; its central feature is the certification established by the signature." *Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2nd Cir.1986). "While the drafters of the Rule could easily have further extended its application by reference to the entire conduct of the proceedings, they failed to do so...." 803 F.2d at 1274. Parenthetically, we note that the Second Circuit may have softened its stance somewhat in *O'Malley v. New York City Transit Authority*, 896 F.2d 704 (2nd Cir.1990). There the court indicated that the need to impose sanctions was "enhanced" because of the parties' insistence on pursuing a claim after receiving advice to withdraw the claim from the trial court and after being warned by the opposing side that they would request sanctions if the request to withdraw the meritless claim was ignored. 896 F.2d at 709. The Fifth Circuit follows the approach of the Second Circuit by limiting the obligations of attorneys under Rule 11 to the date a document is signed because the result is consistent with the intent of the drafters expressed in the plain language of the rule itself.[2]

*Thomas v. Capital Sec. Services, Inc.*, 836 F.2d 866, 874–75 (5th Cir.1988). "Like a snapshot, Rule 11 review focuses upon the instant when the picture is taken—when the signature is placed upon the document." 836 F.2d at 874.

Until very recently, the position of the Sixth Circuit on the question at hand was debatable. In *Albright v. Upjohn*, 788 F.2d 1217, 1221 (6th Cir.1986), the Court was faced with an argument that sanctions should be imposed because a claim was pursued long after it should have been dismissed, but the Court imposed sanctions for the filing of the meritless claim, as opposed to its continued prosecution. Further, Judge Wiseman, in *Balfour Guthrie v. Hunter Marine*, 118 F.R.D. 66 (M.D.Tenn.1987), stated that "because the continuing duty issue only arises in the context of a reasonable filing that later becomes unreasonable, it is uncertain what position this Circuit would adopt...." 118 F.R.D. at 75. However, the position of the Sixth Circuit began to emerge with some clarity in *Jackson v. Law Firm of O'Hara*, 875 F.2d 1224 (6th Cir.1989), where it was observed that Rule 11 relates only to filed documents, not to questionable attorney conduct in general. 875 F.2d at 1229. The Court stated that "the focus of Rule 11, then, is narrow; it relates to a specific act—the signing, and to a specific time— the time of signing. While Rule 11 does not create a continuing obligation ... it does apply to each paper signed by an attorney." *Id.* Finally, in an unreported decision,[3] the Sixth Circuit, in an opinion written by Judge Thomas Higgins, sitting by designation, declared: "Rule 11 does not impose a continuing obligation on the signer to update, correct or withdraw any pleading, motion or other paper which satisfied the requirements of Rule 11 when signed."

In contrast to the eight Circuits that have definitively addressed the question

---

**2.** At one time, the Fifth Circuit imposed a continuing duty on lawyers to continue to evaluate their filed documents as the litigation developed and, under appropriate circumstances, withdraw or dismiss the document. *Thomas v. Capital Sec. Services, Inc.*, 812 F.2d 984 (5th Cir. 1987).

**3.** *Roy v. United States Fidelity & Guaranty Company*, 922 F.2d 841 (6th Cir.1991).

and have held that Rule 11 does not impose continuing duties on lawyers, the First Circuit, in *Kale v. Combined Ins. Co. of America*, 861 F.2d 746 (1st Cir.1988), stated that "Rule 11 imposes a duty on counsel to investigate their clients' claims before making any filings *and to reassess them throughout the litigation.*" 861 F.2d at 758. Subsequent to *Kale,* the First Circuit observed that attorneys are under a continuing obligation to ensure that the proceedings do not continue without a reasonable basis in law and fact. *Cruz v. Savage,* 896 F.2d 626, 630 (1st Cir.1990). "The rule thus requires attorneys to conduct [themselves] in a manner bespeaking reasonable professionalism and consistent with the orderly functioning of the judicial system." 896 F.2d at 630. *See also, Ballard's Service Center, Inc. v. Transue,* 865 F.2d 447, 449 (1st Cir.1989). "[A] belief reasonable when a paper was filed may become unreasonable in light of subsequent developments. Thus, a claim that may be properly asserted and a defense that may be properly maintained when first filed could be rendered untenable by later discovery disclosures. To persist in claims or defenses beyond a point where they could no longer be considered to be well-grounded in fact may violate the rule." Schwarzer, 104 F.R.D. at 189.

Returning now to the case at hand, we conclude that there are no continuing obligations imposed by Tennessee's version of Rule 11. This result is consistent with the approach taken by all federal intermediate appellate courts (except one) that have had the opportunity to address the question and is predicated upon the same reasoning. No court has required a party to actually seek a dismissal. Requiring counsel to aggressively pursue dismissal of his client's claim strikes us as being contrary to our adversary system.

■ Although we have refused to judicially craft a continuing duty obligation onto Rule 11, there is a meaningful limit on counsel's responsibility in this regard. That is, our interpretation does not leave a party exposed to endlessly defending a lawsuit which has become meritless, because

once it is determined that a particular position is either legally or factually frivolous, the filing of any further pleadings, motions, or other papers in opposition to a dismissal, *does* violate Rule 11, thereby triggering the rule's mandatory sanctioning provisions. Completely aside from Rule 11, the courts of this state have, under the inherent power to supervise and control their own proceedings, the authority to sanction attorneys, but only for pursuing matters in bad faith or conducting themselves in a reckless manner. *Cf., Cunningham v. County of Los Angeles,* 879 F.2d 481, 490 (9th Cir.1988); *Oliveri v. Thompson,* 803 F.2d 1265 (2nd Cir.1986); *Healey v. Chelsea Resources Ltd.,* 133 F.R.D. 449, 455 (S.D.N.Y.1990). We note in this regard that it has traditionally been the province of the courts to set standards for the bar and that an attorney acts not only as a client's representative, but also as an officer of the court and, accordingly, has a duty to serve both masters. *Business Guides,* 111 S.Ct. at 940. "Disciplinary powers which English and American courts have for centuries possessed over members of the bar [are] incident to their broader responsibility for keeping the administration of justice and the standards of professional conduct unsullied." *Id.*

### III.

■ Even if we were to hold that Rule 11 imposed a continuing duty on the plaintiff's counsel in this case, it is significant that *neither* counsel communicated with the other for nearly a year, and defense counsel did not file for summary judgment until after he learned that the matter was going to be subject to a docket sounding and set for trial. The defendant had ample opportunity to conclude the matter much earlier in the litigation. There is no question that Defendant, as the party seeking sanctions, had a duty to mitigate. *See, e.g., White v. General Motors,* 908 F.2d 675, 684 (10th Cir.1990); *Thomas v. Capital Sec. Services, Inc.,* 836 F.2d 866, 879 (5th Cir.1988). As a general principle, it would be inequitable to permit a defendant to increase the amount of attorney's fees recoverable as a sanction by unnecessarily

defending against frivolous claims which could have been dismissed quickly on motion. *Oliveri v. Thompson,* 803 F.2d 1265, 1280 (2nd Cir.1986).

■ Similarly, an attorney may not remain idle after Rule 11 has been violated. A party seeking sanctions should give *prompt* notice to the court and to the offending party upon discovering a basis for doing so. 836 F.2d at 879. Prompt notice of Rule 11 sanctions conserves judicial time, energy, as well as monetary resources, while at the same time deters future violations. One court has properly observed:

> Permitting or encouraging the opposing party to litigate a baseless action or defense past the point at which it could have been disposed of tends to perpetuate the waste and delay which the rule is intended to eliminate. It also undermines the mitigation principle which should apply in the imposition of sanctions, limiting recovery to those expenses and fees that were reasonably necessary to resist the offending paper.
>
> In assessing the damage done, the court should consider the extent to which it is self-inflicted due to the failure to mitigate. If a baseless claim could have been readily disposed of by summary procedures, there is little justification for a claim of attorney's fees and expenses engendered in lengthy and elaborate proceedings in opposition. The rule's purpose would be frustrated if it encouraged the offending party to play the very game at which it is aimed.

836 F.2d at 889, n. 19. Defense counsel in the present litigation was not sufficiently diligent in seeking a dismissal in violation of the mitigation principles discussed above.

Our opinion today strives to further Rule 11's goal of deterring abuse in the litigation process by providing guidance concerning the procedures and standards utilized in the imposition of Rule 11 sanctions. We trust that our opinion, like the Rule itself, will instill among members of the bar a sense of responsibility to prevent public perception of the legal profession as one tolerant of abuse in its midst. The public has an interest in, and the judiciary a responsibility for, the efficient, economic, and expeditious administration of justice. Baseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless inconvenience, expense, and delay. *Cooter & Gell,* 110 S.Ct. at 2457. Rule 11 is a powerful tool for judges in their roles as judicial overseers and attorneys in their battle against fellow practitioners who do not comply with their obligations under the Rule.

■ To be sure, this Court views Rule 11 as a potent weapon that can and should be used to curb litigation abuses that from time to time plague the dockets of our trial courts. Invoked properly, Rule 11 can confer great benefits on all concerned. If abused, Rule 11 may chill an attorney's enthusiasm and stifle the creativity of litigants in pursuing novel factual and legal theories. As a result, the legal system as a whole will suffer. As Justice Kennedy recently observed in a Rule 11 case: "Just as patience is requisite in the temperament of the individual judge, so it must be an attribute of the judicial system as a whole. Our annoyance at spurious and frivolous claims, and our real concern with burdened dockets, must not drive us to adopt interpretations of the rule that makes honest claimants fear to petition the courts." *Business Guides,* 111 S.Ct. at 943. It is for this reason that trial courts, while urged not to hesitate to impose sanctions once a violation of Rule 11 is found to exist, should use utmost care in doing so. The reputations and careers of attorneys may be seriously and permanently hampered when Rule 11 is implemented in a careless fashion.[4] 59 Geo.Wash.L.Rev. at

---

4. It would appear that a violation of Rule 11 could stem from a variety of causes: inexperience, incompetence, neglect, wilfulness, or deliberate choice. In assessing the cause, the trial judge should consider not only the circumstances of the particular violation, but also the factors bearing on the reasonableness of the conduct, such as experience and past performance of the attorney, as well as the general standards of conduct of the bar of the court.

685–86. Our opinion, however, should not be construed in a light inconsistent with this court's view that Rule 11 stands poised to punish those who would manipulate the judicial system for ends inimicable to those for which it was created.

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal shall be taxed against the Appellants.

REID, C.J., O'BRIEN and DAUGHTREY, JJ., and WADE, Special Justice, concur.

For an excellent review of sanctioning alternatives, see *Schwarzer*, 104 F.R.D. at 201–04. *See* *generally,* Joseph, *Sanctions: The Federal Law of Litigation Abuse* (1989).