# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

| | | |
|---|---|---|
| ERNEST R. FENN and wife, PATSY S. FENN, | ) ) ) | **FILED**<br>December 1, 1995<br><br>**Cecil Crowson, Jr.**<br>Appellate Court Clerk |
| Plaintiffs, | ) ) | |
| and | ) ) | |
| HARRY W. MILLER, III, | ) ) | Davidson Circuit |
| Plaintiffs' Counsel/Appellant, | ) ) | No. 93C-3327 |
| VS. | ) ) | |
| HIGHLAND CREDIT BUREAU, INC., d/b/a MID-STATE CREDIT BUREAU, | ) ) ) ) | Appeal No.<br>01-A-01-9503-CV-00100 |
| Defendant/Appellee, | ) ) | |
| and | ) ) | |
| MAPCO PETROLEUM, INC., and TELECREDIT SERVICE CORP.. | ) ) | |

APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE
THE HONORABLE WALTER C. KURTZ, JUDGE

For Harry W. Miller, III:

Larry L. Roberts
ROBERTS & ASSOCIATES
Nashville, Tennessee

For Highland Credit Bureau, Inc.:

Henry F. Todd, Jr.
TODD, SPENCER & ATKINS
Dickson, Tennessee

**AFFIRMED AND REMANDED**

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves the imposition of Tenn. R. Civ. P. 11 sanctions for inadequate pre-filing investigation in a malicious prosecution case. After the Fifth Circuit Court for Davidson County dismissed the plaintiffs' claims against one of the defendants, the defendant sought sanctions against one of the plaintiffs' lawyers. The trial court conducted an evidentiary hearing, found that the plaintiffs' lawyer had failed to make an objectively reasonable factual and legal inquiry before filing the complaint, and ordered the lawyer to pay the defendant $1,500. On this appeal, the plaintiffs' lawyer challenges the legal and factual basis for the sanctions. We have determined that the record fully supports the trial court's decision and also that this appeal is frivolous. Accordingly, we affirm and remand the case for the assessment of damages pursuant to Tenn. Code Ann. § 27-1-122 (1980).

## I.

Patsy S. Fenn's purse was stolen from her automobile on November 6, 1992. She immediately reported the theft to the Metropolitan Police Department. The purse contained a checkbook for a joint account Ms. Fenn and her husband maintained at NationsBank. On the same evening, the thief made out one of the stolen checks for $20, forged Mr. Fenn's signature, and negotiated the check at a Mapco convenience store on Thompson Lane in Nashville.

NationsBank refused to honor the check and returned it to Mapco bearing a stamp indicating that the check had been reported stolen. On November 21, 1992, Mapco sent Mr. Fenn a form letter informing him that NationsBank had dishonored the check and requesting that he redeem the check. The letter concluded by stating that "[f]ailure to recover your check will result in prosecution through the District Attorney's office and notification of Credit Bureau."

The Fenns contacted a Nashville lawyer named Larry Roberts after they received Mapco's letter. On December 9, 1992, Mr. Roberts responded to

Mapco's letter by pointing out that the check had been stolen and that Mr. Fenn's signature was a forgery. The letter also threatened a malicious prosecution action if Mapco attempted to prosecute Mr. Fenn criminally or if it reported unfavorable information to any credit reporting agency. The letter concluded by stating that the Fenns would take "prompt legal action" if they received further "correspondence of any threatening nature."

At some point not apparent in the record, Mapco turned the matter over to Highland Credit Bureau, Inc. ("Highland") for collection. There is no evidence that Mapco provided Highland with Mr. Roberts' December 9, 1992 letter threatening litigation if any additional collection efforts were made. Highland sent a form letter to Mr. Fenn on April 16, 1993, requesting payment of the disputed check. The tone of Highland's letter was more conciliatory than Mapco's original letter. It stated that Highland would assume that the debt was valid unless Mr. Fenn notified them that he disputed the debt. The letter also informed Mr. Fenn that Highland would obtain verification of the debt and provide him with a copy if he disputed the debt.

Mr. Roberts responded to Highland's letter on April 27, 1993. He disputed the debt and stated that Mr. Fenn would "make no voluntary payment of any amount." The letter also threatened legal action if either Mapco or Highland made any unfavorable report to a credit bureau and demanded a letter of apology from both Mapco and Highland. Upon receipt of Mr. Roberts' letter, Highland closed its file and returned Mr. Fenn's check to Mapco with a notation that the account was "uncollectable." Highland took no further action with regard to Mr. Fenn's check. It did not file an adverse report with any credit or check information service and did not provide the written apology demanded by Mr. Roberts.

Ms. Fenn encountered a problem in September 1993 when she used a check to pay for her daughter's contact lenses. The optician was reluctant to accept the check after a routine inquiry with Telecredit Service Corporation reported that the check had been stolen. After Ms. Fenn explained the circumstances, the optician accepted the check and gave Ms. Fenn a form to discover the basis for Telecredit's

report that the check had been stolen. Mr. Fenn did not send in the form but contacted Mr. Roberts instead.

Mr. Roberts assigned the matter to Harry W. Miller, III. Messrs. Miller and Roberts did not discuss the matter with Mapco, Highland, or Telecredit and did not attempt to obtain the Fenns' credit report to determine whether it contained adverse information and, if it did, the source of the information. They believed that Mapco was the chief culprit but assumed that Highland must have reported derogatory credit information about the Fenns. Accordingly, they decided to "sue everyone who had anything to do with this." On November 3, 1993, Mr. Miller prepared and filed a complaint against Mapco, Highland, and Telecredit alleging defamation, extortion, harassment, and violation of the federal debt collection and state consumer protection laws. The complaint specifically alleged that Highland had attempted extortion by demanding payment of the check and that it had engaged in outrageous business conduct for falsely reporting the Fenns to Telecredit.

Highland denied the allegations in the complaint and moved for summary judgment. Their motion was supported by an affidavit stating that Mapco had turned over Mr. Fenn's check for collection but that it had returned the check to Mapco after receiving Mr. Roberts' letter. The affidavit also stated that it took no further action with regard to the check and that it did not pass along any derogatory credit information about the Fenns. After Mr. Miller conceded at the hearing on Highland's motion that the Fenns had no claim against Highland except perhaps for a violation of the federal debt collection statutes, the trial court granted the motion and dismissed all the claims against Highland.

Highland then moved for sanctions pursuant to Tenn. R. Civ. P. 11 and for discretionary costs pursuant to Tenn. R. Civ. P. 54.04. After denying Messrs. Roberts' and Miller's motion to withdraw from the case, the trial court conducted an evidentiary hearing on September 29, 1994. Thereafter, on October 12, 1994, the trial court filed a memorandum and order finding that "neither Mr. Roberts nor Mr. Miller engaged in an adequate investigation as to the role of Highland" and

granted Highland a $1,500 judgment solely against Mr. Miller because he was the only lawyer who signed the complaint.

## II.

Mr. Miller's four issues relate to the factual and legal basis of the trial court's decision that he did not conduct a reasonable investigation into the law and facts before signing and filing the complaint against Highland. He asserts that his conduct was appropriate and that Highland waited too long to seek monetary sanctions. We disagree on both counts.

## A.

Tenn. R. Civ. P. 11 responds to the well-publicized problems caused by overcrowded dockets and pre-trial cost and delay.[1] It reminds lawyers that their duty to their client does not outweigh their duty to their adversaries and to the justice system itself. *City of East St. Louis v. Circuit Court for the Twentieth Judicial Circuit*, 986 F.2d 1142, 1143 (7th Cir. 1993); *In re Ronco, Inc.*, 105 F.R.D. 493, 497 (N.D. Ill. 1985). Its principle goal is to improve lawyers' behavior,[2] and it accomplishes this goal by providing an economic deterrent against filing complaints and other papers that are not reasonably based in law or in fact. *Con-Tech, Inc. v. Sparks*, 798 S.W.2d 250, 253 (Tenn. Ct. App. 1990).

The rule is straightforward. It requires that a lawyer's conduct be measured against an objective standard of reasonableness under all the circumstances. *Andrews v. Bible*, 812 S.W.2d 284, 288 (Tenn. 1991); *Metropolitan Gov't v. Stout*, App. No. 89-331-II, slip op. at 8, 15 T.A.M. 31-6 (Tenn. Ct. App. July 5, 1990) (No Tenn. R. App. P. 11 application filed). The Tennessee Supreme Court has explained the requirements of Tenn. R. App. P. 11 as follows:

---

[1]Debbie A. Wilson, Note, *The Intended Application of Federal Rules of Civil Procedure 11: An End to the "Empty Head, Pure Heart" Defense and a Reinforcement of Ethical Standards*, 41 Vand. L. Rev. 343, 343-44 (1988).

[2]5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1331, at 19 (2d ed. 1990).

1. An attorney must READ every paper before signing it.

2. He [or she] must make a reasonable pre-filing investigation of the FACTS.

3. He [or she] must research the LAW, unless he [or she] is certain he [or she] knows it.

4. The law as applied to the facts must REASONABLY WARRANT the legal positions and steps he [or she] takes. If existing law does not warrant these positions, a plausible argument for the extension of the law to the facts of the case is required.

5. It must be demonstrated, as the basis of pre-filing investigation and research, that there is a REASONABLE BASIS to name each defendant named, and to support each claim asserted. The shotgun complaint or answer, filed in the hope that discovery will produce the justification for it, is improper.

*Andrews v. Bible*, 812 S.W.2d at 288 (citing *Whittington v. Ohio River Co.*, 115 F.R.D. 201, 209 (E.D. Ky. 1987)).

The courts must gauge the reasonableness of a lawyer's conduct in light of the circumstances known to the lawyer when he or she signed the document. *Andrews v. Bible*, 812 S.W.2d at 288; *Krug v. Krug*, 838 S.W.2d 197, 205 (Tenn. Ct. App. 1992). The inquiry is heavily fact-intensive. *Thomas v. Capital Sec. Serv., Inc.*, 836 F.2d 866, 871-72 (5th Cir. 1988). Accordingly, reviewing courts defer to trial courts' factual findings and review their sanctions decisions using the abuse of discretion standard. *Cooter & Gell v. Hartmarx Corp*, 496 U.S. 384, 404-05, 110 S. Ct. 2447, 2460-61 (1990); *Krug v. Krug*, 838 S.W.2d at 205.

**B.**

Messrs. Roberts and Miller had no evidence linking Highland with Ms. Fenn's check cashing problems when Mr. Miller prepared and filed the complaint against Highland. Ms. Fenn provided them with no new information. She believed that "Mapco [had] messed up" and trusted that her lawyers would "do the right

thing." Despite the lack of evidence against Highland, neither Mr. Miller nor Mr. Roberts made any investigation or inquiry into the facts during the seven weeks prior to filing the complaint. They did not contact Highland directly or attempt to obtain the Fenns' credit reports even though they were readily available. They did not even return the form provided by the optician that would have revealed the source of Telecredit's information that Ms. Fenn's check had been stolen.

Messrs. Roberts and Miller presented little evidence with regard to their decision to sue Highland. Mr. Miller did not testify even though he attended the hearing on Highland's request for sanctions. Instead, he submitted an affidavit stating in the most conclusory terms that "a reasonable pre-filing investigation of the facts were [sic] made before the signing of the said Complaint" and that "a reasonable research of the law was performed based on the facts before the signing of the said Complaint." Mr. Roberts added little substance to Mr. Miller's affidavit. He stated that he had not researched the federal debt collection statutes, that he assumed that Highland must have been involved, and that he might not have sued Highland if it had sent Ms. Fenn a written apology.

The evidence does not preponderate against the trial court's finding that Messrs. Miller and Roberts failed to conduct a reasonable investigation into the facts and the law before suing Highland. Their claims against Highland are quintessential examples of the "shotgun complaint" criticized by the Tennessee Supreme Court. *Andrews v. Bible*, 812 S.W.2d at 288. Accordingly, we have determined that Mr. Miller has not carried his heavy appellate burden to demonstrate that the trial court abused its discretion by imposing a $1,500 sanction against him.

## C.

Mr. Miller also insists that Highland was not entitled to Tenn. R. Civ. P. 11 sanctions because it waited too long to seek sanctions and because it did not mitigate its damages. Parties seeking Tenn. R. Civ. P. 11 sanctions must mitigate their damages by giving prompt notice to the trial court and the offending party

of their intent to seek sanctions. *Andrews v. Bible*, 812 S.W.2d at 291-92. Mr. Miller has not explained precisely how Highland failed to mitigate its damages, and our review of the record has not revealed any lack of diligence on Highland's part.

The Fenns' depositions taken in March 1994 revealed that they had no factual basis for their claim that Highland had reported derogatory credit information about them to another credit or check reporting agency. Immediately after the depositions, Highland's lawyer informed Mr. Miller of Highland's intention to seek sanctions. The Fenns continued to press their claims for five months notwithstanding this warning. Approximately one week after the trial court summarily dismissed the Fenns' claims, Highland filed its motion for Tenn. R. Civ. P. 11 sanctions.

The sanctions issue is normally determined at the end of the case. Highland afforded the Fenns an adequate opportunity to withdraw their suit, and the record demonstrates that the efforts of Highland's lawyer after March 1994 were focused on bringing the suit against his client to a swift conclusion. Accordingly, we find nothing dilatory in the conduct of Highland or its lawyer.

### IV.

Highland has requested additional sanctions on the ground that Mr. Miller's appeal is frivolous. Since successful litigants should not have to bear the expense and vexation of groundless appeals, *Davis v. Gulf Ins. Group,* 546 S.W.2d 583, 586 (Tenn. 1977), Tenn. Code Ann. § 27-1-122 (1980) empowers the appellate courts to award reasonable damages, including legal expenses, against appellants whose appeals are frivolous or taken solely for delay.

An appeal is frivolous if it is devoid of merit and if it has little chance of success. *Liberty Mut. Ins. Co. v. Taylor*, 590 S.W.2d 920, 922-23 (Tenn. 1979); *Industrial Dev. Bd. v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). An appeal has no reasonable chance of success when reversal of the trial court's

decision would require revolutionary changes in the established standards of review. *Davis v. Gulf Ins. Group*, 546 S.W.2d at 586.

Notwithstanding the clear precedent establishing the "abuse of discretion" standard of review in Tenn. R. Civ. P. 11 cases,[3] Mr. Miller bases his arguments on the less stringent standard of review in Tenn. R. App. P. 13(d). This is the wrong standard by which to review the issues in this case.[4] Using the proper standard of review, this appeal presents no debatable questions of law or factual findings and conclusions that are not clearly supported. Accordingly, we find that this appeal is frivolous and remand the case to the trial court for a hearing to assess damages in accordance with Tenn. Code Ann. § 27-1-122.

## V.

We affirm the judgment and remand the case to the trial court for further proceedings consistent with this opinion. We also tax the costs of this appeal to Harry W. Miller, III and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
SAMUEL L. LEWIS, JUDGE

_____
BEN H. CANTRELL, JUDGE

---

[3]*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. at 404-05, 110 S. Ct. at 2460-61; *Krug v. Krug*, 838 S.W.2d at 205.

[4]This court has held that Tenn. R. App. P. 13(d) is the appropriate standard by which to review the amount of sanctions imposed pursuant to Tenn. R. Civ. P. 11. *Con-Tech, Inc. v. Sparks*, 798 S.W.2d at 254. Mr. Miller's posture on this appeal is that the trial court should not have imposed any Tenn. R. Civ. P. 11 sanctions against him; he has not taken issue with the amount of the sanction award.