# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON
_____

| | | |
|---|---|---|
| | ) | |
| **CLEMMYE MULLENIX BERGER,** | ) | Shelby County Circuit Court |
| | ) | No. 62431 T.D. |
| Plaintiff/Appellee. | ) | |
| | ) | |
| VS. | ) | C. A. NO. 02A01-9604-CV-00077 |
| | ) | |
| **MARVIN L. RATNER, JOYCE H.** | ) | |
| **SEALAND, individually and as members** | ) | |
| **of the law firm formerly known as** | ) | |
| **RATNER & ROTCHILD and now** | ) | |
| **known as RATNER, ROTCHILD &** | ) | |
| **SEALAND**, | ) | |
| | ) | |
| Defendants/Appellants. | ) | |
| | ) | |

**FILED**

April 11, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

_____

From the Circuit Court of Shelby County at Memphis.
**Honorable James E. Swearengen, Judge**

**Henry L. Klein**,
APPERSON, CRUM, DUZANE & MAXWELL, Memphis, Tennessee
Attorney for Defendants/Appellants Marvin L. Ratner and Joyce H. Sealand.


**Joyce H. Sealand**, Memphis, Tennessee
Attorney for Ratner, Rotchild & Sealand.


**Blanchard E. Tual**, Memphis, Tennessee
Attorney for Plaintiff/Appellee Clemmye Mullenix Berger.


**John J. Thomason**,
THOMASON, HENDRIX, HARVEY, JOHNSON & MITCHELL, Memphis, Tennessee
Attorney for Respondent/Appellee Blanchard E. Tual.

OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**


**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Defendant Marvin L. Ratner appeals the trial court's order denying his motion for Rule 11[1] sanctions against Plaintiff/Appellee Clemmye Mullenix Berger and her attorney, Appellee Blanchard Tual. We conclude that the trial court did not abuse its discretion in denying Ratner's motion for sanctions, and we affirm.

Ratner's motion for sanctions arose out of a complaint for legal malpractice filed against him in June 1994 by Blanchard Tual on behalf of Tual's client, Clemmye Mullenix Berger.[2] The malpractice complaint related to Ratner's prior representation of both Clemmye and Clemmye's son, Louis Jack Berger, in estate planning matters.[3] Essentially, Clemmye claimed that Ratner failed to adequately represent Clemmye's interests in the estate planning matters and, further, that Ratner breached his fiduciary duty to Clemmye by failing to adequately advise her of the conflict of interest which resulted from Ratner's representation of both Clemmye and Clemmye's son, Jack.

More specifically, Clemmye's complaint contained the following allegations. Clemmye, who was 81 years old when she filed her complaint, was the founder of Pancho's Mexican restaurants. Clemmye opened her first Pancho's restaurant in 1956 in West Memphis, Arkansas. Over the years, Clemmye's business grew, and she opened other Pancho's restaurants in Tennessee, Arkansas, and Mississippi. By Clemmye's own account, in 1988 there were approximately seventeen Pancho's restaurants, "including franchises, fast food outlets, a commissary and a chip plant." In the early 1980's, as Clemmye approached retirement age, she began delegating and entrusting her Pancho's business affairs to her son, Jack. Around this time, Jack began attempting to persuade Clemmye to transfer her stock in the various Pancho's corporations to him. In the ensuing years, Jack alternately requested and demanded that Clemmye transfer the stock to him. Jack justified his demands by explaining that Clemmye "would save a huge amount of estate and income taxes" if she transferred the stock during her lifetime.

---

[1]T.R.C.P. 11.

[2]In her complaint, Clemmye also named Attorney Joyce H. Sealand as a defendant, as well as the law firm of Ratner, Rotchild & Sealand. Clemmye later filed a voluntary non-suit as to these defendants.

[3]For clarity, we refer to Clemmye Mullenix Berger and Louis Jack Berger by their first names as they were in the briefs.

It was further alleged that, in 1988, Jack employed Defendant Ratner to prepare comprehensive estate plans for both Jack and Clemmye. Although Clemmye claimed to have no prior knowledge of these arrangements, her complaint acknowledged that she later participated in at least one meeting where the estate plans were discussed. At the meeting, the discussion focused on avoiding estate taxes that would be due upon Clemmye's death. Jack and Ratner represented to Clemmye that, if she transferred her stock to Jack, the stock would be returned to Clemmye in the event Jack predeceased Clemmye. In November 1988, Jack presented Clemmye with a stock power for all of Clemmye's stock in Pancho's Management, Inc. ("PMI"), one of the Pancho's corporations,[4] with instructions that Clemmye sign the stock power and return it to Jack. Clemmye allegedly signed the stock power but did not deliver it to Jack. Instead, she retained the stock power and still had it in her possession at the time she filed the complaint. At some point in 1988 or 1989, however, Jack allegedly traced and forged Clemmye's signature to another stock power for the PMI stock, and he gave the forged document to Ratner. Ratner, using the forged document, had new PMI stock certificates prepared listing Jack as the owner. In November 1989, Ratner filed a Tennessee gift tax return on behalf of Clemmye relative to the stock. The complaint stated that Ratner did not file a federal gift tax return.

According to Clemmye's complaint, Jack later admitted the forgery and promised to return the stock to Clemmye. In June 1993, however, Jack died in Memphis at the age of sixty. When Jack's Will was probated, Clemmye "first learned that Jack had not transferred the PMI stock into her name to correct the forgery nor did he leave the PMI stock to her as he and Ratner had promised."

After filing the foregoing complaint on behalf of Clemmye, Tual learned that some of the complaint's allegations were untrue. In particular, Tual retained a handwriting expert and learned that, contrary to Clemmye's allegation, the stock power was not forged. Accordingly, Tual filed an amended complaint which omitted any allegations of forgery.

---

[4]The complaint also referred to conveyances of stock in another Pancho's corporation (Pancho's Taco of Memphis, Inc.), as well as real estate, but the Rule 11 motion focused primarily on allegations pertaining to the PMI stock.

Tual also learned that, contrary to the complaint's allegation, Ratner had filed a federal gift tax return relative to Clemmye's transfer of the PMI stock. A copy of the federal gift tax return was contained in the same file where Tual previously found the Tennessee gift tax return, and this file had been in Tual's possession for approximately two months at the time he filed the original complaint. In accordance with this discovery, the amended complaint filed by Tual also omitted any allegation that Ratner had failed to file a federal gift tax return.

In January 1995, Ratner filed a motion to dismiss Clemmye's complaint on the ground that the action was barred by the one-year statute of limitation applicable to legal malpractice actions. *See* T.C.A. § 28-3-104 (Supp. 1989). The trial court granted Ratner's motion and dismissed the amended complaint with prejudice.

After dismissal of the action, Ratner filed a motion for sanctions pursuant to Rule 11 of the Tennessee Rules of Civil Procedure. In support of the motion, Ratner contended that the original complaint filed by Tual and Clemmye was not well-grounded in fact and that a reasonable pre-filing investigation would have revealed no basis for filing the lawsuit.

At the hearing on the Rule 11 motion, Ratner focused primarily on four misrepresentations contained in the original complaint which, Ratner contended, a reasonable pre-filing investigation would have revealed to be false:

> 1.   In 1988, Jack, as a part of his efforts to get Clemmye's stock in Pancho's, employed Ratner to prepare comprehensive estate plans for Jack and Clemmye. Clemmye did not request or direct Jack to employ Ratner or to prepare an estate plan for her. Clemmye had no knowledge of any estate plan being prepared for her.
>
> 2.   At some point in 1988 or 1989, Jack traced and forged Clemmye's name to another stock power for the PMI stock and gave it to Ratner. Jack admitted this forgery to Clemmye in 1989 and promised her that he would take the steps to correct the forgery and that he would give the stock back to Clemmye.
>
>      . . . .
>
>      Even though Clemmye did not deliver the stock power for her PMI stock to either Jack or Ratner, Jack and Ratner, using the forged stock power, prepared or caused to be prepared . . .

> new stock certificates . . . listing Jack as the owner of the 14,970 shares of PMI stock.

3.     Ratner did not file a federal gift tax return.

4.     When Jack's Will was probated, Clemmye first learned that Jack had not transferred the PMI stock into her name to correct the forgery nor did he leave the PMI stock to her as he and Ratner had promised.

As previously indicated, when Tual learned that allegations 2 and 3 were incorrect, he filed an amended complaint omitting the allegations. The amended complaint also omitted allegation 1, that "Clemmye had no knowledge of any estate plan being prepared for her."[5] At the hearing below, however, Ratner insisted that these false allegations in the original complaint subjected Tual and Clemmye to sanctions under Rule 11. Ratner also contended that allegation 4, a part of which was repeated in the amended complaint,[6] was sanctionable. During the discovery process, Clemmye gave a lengthy deposition during which she revealed that, when Jack made his will, the will was placed in a safe in Clemmye's home, where it remained until Jack's death. Based on this evidence, Ratner contended that Clemmye's claim that she did not know the contents of Jack's will prior to his death was incredible and defied belief.

The trial court denied Ratner's motion for sanctions, and this appeal followed. Our review of the trial court's ruling on the Rule 11 motion is under an "abuse of discretion" standard. *Krug v. Krug*, 838 S.W.2d 197, 205 (Tenn. App. 1992); *accord State ex rel. Thompson v. Walker*, No. 01A01-9311-CR-00486, 1994 WL 164144, at *4 (Tenn. App. May 4, 1994), *perm. app. denied* (Tenn. Aug. 29, 1994). Our review is governed by this deferential standard because the issue of whether a Rule 11 violation has occurred often requires the trial court to make fact-intensive, close calls regarding the reasonableness of the attorney's (and client's) conduct. *Krug*, 838 S.W.2d at 205 (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 404 (1990)); *accord Binkley v. Cannon*, No. 01-A-01-9408-CH-00401, 1995 WL 66927, at *5 (Tenn. App. Feb. 17, 1995) ("A Rule 11

---

[5]When read in context, this statement merely supports the preceding allegations in the original complaint to the effect that Clemmye did not initiate the estate planning discussions. Subsequent allegations in the original complaint make clear that Clemmye later participated in discussions with Ratner pertaining to Clemmye's and Jack's estate plans.

[6]As contained in the amended complaint, the allegation stated that "When Jack's Will was probated, Clemmye first learned that Jack had not left his Pancho's stock either to her outright or in trust."

violation involves fact intensive findings; therefore, great deference will be given to the trial court's findings.").

When Tual and Clemmye filed the complaint in June 1994, Rule 11 provided in pertinent part that:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

T.R.C.P. 11.[7]

Ratner's Rule 11 motion primarily was premised on the argument that Tual failed to make a reasonable pre-filing inquiry into the factual basis of Clemmye's complaint. In *Andrews v. Bible*, 812 S.W.2d 284 (Tenn. 1991), our supreme court set forth the test to be applied in determining whether an attorney's conduct is sanctionable under Rule 11:

> The test to be applied in deciding whether an attorney's conduct is sanctionable, is one of objective reasonableness under all the circumstances, [***Business Guides, Inc. v. Chromatic Communications Enters.***, 498 U.S. 533, 551, 111 S. Ct. 922, 933 (1991)], and the reasonableness of the attorney's belief must be assessed in light of the circumstances existing at the time the document in question was signed. [Schwarzer, ***Sanctions Under the New Federal Rule 11--A Closer Look***, 104 F.R.D. 181, 189 (1985)]. . . . "[T]he Court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was

---

[7]Effective July 1, 1995, Rule 11 was amended to track the current federal version of the rule. *See* T.R.C.P. 11 advisory commission's comment to 1995 amendment. As revised, Rule 11 "does not require that a paper actually be well grounded in fact, but only that the claims have evidentiary support to the best of the [pleader's] 'knowledge, information and belief formed after an inquiry reasonable under the circumstances.'" ***Vandeventer v. Wabash Nat'l Corp.***, 893 F. Supp. 827, 841 (N.D. Ind. 1995) (quoting Fed. R. Civ. P. 11).

reasonable to believe at the time [of signing]."

*Andrews v. Bible*, 812 S.W.2d at 288 (quoting Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment).

Federal courts have noted that the reasonableness of the attorney's pre-filing inquiry may depend upon the following factors:

1.      [T]he time available to the signor for investigation;

2.      [W]hether the signor had to rely on a client for information as to the facts underlying the pleading, motion, or other paper;

3.      [W]hether the pleading, motion, or other paper was based on a plausible view of the law; or

4.      [W]hether the signor depended on forwarding counsel or another member of the bar.

*Century Prods. v. Sutter*, 837 F.2d 247, 250-51 (6th Cir. 1988) (citing Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment).[8]

After carefully reviewing the record in this case, we conclude that the trial court did not abuse its discretion in denying Ratner's motion for sanctions against Tual pursuant to Rule 11. When Tual was researching Clemmye's case in preparation for filing the complaint, it became obvious that a statute of limitations problem existed with regard to any possible malpractice claim against Ratner. In fact, the underlying malpractice action was ultimately dismissed on the ground of the statute of limitations. "The time available for an investigation prior to the expiration of a statute of limitations is a factor that obviously should enter into the analysis" of whether an attorney's pre-filing inquiry was objectively reasonable. *Andrews v. Bible*, 812 S.W.2d at 288-89. "The shorter the time the more reasonable it is for an attorney to rely on [his] client." *CTC Imports & Exports v. Nigerian Petroleum Corp.*, 951 F.2d 573, 579 (3d Cir. 1991), *cert. denied*, 504 U.S. 914 (1992).

---

[8]Our supreme court has found it appropriate to examine federal decisional authority when interpreting the application of Tennessee's version of Rule 11. *Andrews v. Bible*, 812 S.W.2d at 287; *accord Krug*, 838 S.W.2d at 205.

During the pre-filing period, therefore, Tual relied in part on the representations of his client, 81-year-old Clemmye. Although Clemmye's credibility was called into question by the subsequent revelation that the stock power was not a forgery, this development is not dispositive of the motion for sanctions against Tual. In the absence of some further evidence of attorney fault, an attorney cannot be sanctioned because post-filing developments cause the trial court to question the credibility of the attorney's client. *In re Big Rapids Mall Assocs.*, 98 F.3d 926, 932 (6th Cir. 1996).[9] Moreover, although Rule 11 imposed no continuing obligation upon Tual to correct the complaint,[10] his prompt amendment of the complaint to delete the incorrect allegations certainly weighs in his favor. *Cf. Binkley v. Cannon*, No. 01-A-01-9408-CH-00401, 1995 WL 66927, at **6-7 (Tenn. App. Feb. 17, 1995) (affirming trial court's imposition of sanctions against appellant attorneys where, even after advised of their error, attorneys did not attempt to correct error).

Despite her credibility problems, we also affirm the trial court's decision not to impose sanctions against Clemmye. In her deposition given in June 1994, Clemmye testified that, sometime in 1989, Jack confessed to her that he had forged Clemmye's name to a stock power by tracing her signature from another document. During the deposition, Clemmye did not waver from this testimony, and she produced a document which she claimed was the forged stock power. Later, Clemmye filed an amended complaint omitting the forgery allegations when a handwriting expert opined that the stock power was not a forgery. Nevertheless, other than references to the handwriting expert's opinion, the record contains no evidence to show that, at the time the complaint was signed, Clemmye's forgery allegations were not well-grounded in fact to the best of Clemmye's knowledge, information, and belief.[11]

---

[9]As the court explained:

> It is surely obvious to any judge (as it is to any lawyer) that it is possible for an attorney to make an assessment of a client's credibility in the attorney's office which ultimately may differ substantially from the court's assessment of the same individual under oath at trial.

*In re Big Rapids Mall Assocs.*, 98 F.3d at 932.

[10]*See Andrews v. Bible*, 812 S.W.2d at 291.

[11]As for Clemmye's allegation that she did not know the contents of Jack's will until after his death, we are unwilling to presume, as Ratner suggests, that Clemmye necessarily took the opportunity to familiarize herself with the will's contents merely because the will was stored in a safe in Clemmye's home.

In determining whether to impose sanctions pursuant to Rule 11, the trial court should resolve all doubts in favor of the signer of the pleading. ***Vandeventer v. Wabash Nat'l Corp.***, 893 F. Supp. 827, 840 (N.D. Ind. 1995). Further, in imposing Rule 11 sanctions, the trial court should not pass judgment on the merits of the underlying action. ***CTC Imports & Exports v. Nigerian Petroleum Corp.***, 951 F.2d 573, 579 (3d Cir. 1991), ***cert. denied***, 504 U.S. 914 (1992); ***accord State ex rel. Thompson v. Walker***, No. 01A01-9311-CR-00486, 1994 WL 164144, at *4 (Tenn. App. May 4, 1994) (noting that failure on merits does not make claim frivolous ***per se*** under Rule 11), ***perm. app. denied*** (Tenn. Aug. 29, 1994). Under the circumstances of this case, we conclude that the trial court did not abuse its discretion in declining to impose sanctions against Clemmye.

The trial court's order denying sanctions is affirmed. Costs of this appeal are taxed to appellant Marvin L. Ratner, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
HIGHERS, J. (Concurs)