IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 12, 2000 Session

## PROJECT CREATION, INC., ET AL. v. KENNETH NEAL, ET AL.

**Appeal from the Circuit Court for Wilson County**
**No. 10352     John O. Wootton, Jr., Judge**

---

**No. M1999-01272-COA-R3-CV - Filed August 21, 2001**

---

The trial court dismissed Plaintiffs' libel action and then granted Defendants' motion for sanctions pursuant to Tenn. R. Civ. P. 11.02(1) and 11.02(3), finding that the libel action was filed for an improper purpose and without factual support. The court awarded Defendants $9,262.90 in expenses and attorney fees. We affirm in part and vacate in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Vacated in Part and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Jerry Gonzalez, Lebanon, Tennessee, for the appellants Project Creation, Inc. and Sean Meek.

William E. Farmer, Lebanon, Tennessee, for the appellees, Kenneth Neal, Judy Pratt, Pamela Sandoval, Brenda Williams, W.G. Neal, Jack Pratt, Jr., Hugo Sandoval, and Albert Williams, Jr.

**OPINION**

Plaintiffs, Sean Meek and Project Creation, filed a libel action against Defendants, Kenneth Neal, Judy Pratt, Pamela Sandoval, Brenda Williams, W.G. Neal, Jack Pratt, Jr., Hugo Sandoval, and Albert Williams, Jr., who wrote a letter to the editor of a local newspaper opposing Plaintiffs' proposed use of land which was near theirs. After dismissing the libel action, the trial court granted Defendants' motion for sanctions pursuant to Tenn. R. Civ. P. 11.02(1) and 11.02(3), finding that the libel action was filed for an improper purpose and lacked a factual basis. The court awarded Defendants $9,262.90 in expenses and attorney fees. The merits of the dismissal are not appealed; the assessment of sanctions is.

I.  Background

Sean Meek formed Project Creation, Inc., a non-profit corporation, in 1993.  He intended Project Creation to be a teaching ministry devoted to "creation science." It was funded entirely by donations, the largest of which was $610.

Mr. Meek, through Project Creation, planned to build a facility to promote creation science. He spoke with local Christian Coalition members and obtained their assistance in locating 19.07 acres in Wilson County on which to build.  Before he actually purchased the property, Mr. Meek filed a zoning application with the Wilson County Board of Zoning Appeals, seeking to have the land rezoned or his proposed use approved to accommodate his plans.  The application was filed in the name of the owner of the property, Frances Pratt, and described the project as a "nature center and museum." While the application was pending, Mr. Meek mentioned to local members of the Christian Coalition his desire to keep a "low profile" as to the philosophical aspects of the museum, fearing opposition from "outside groups, evolutionists, and such, who would have tried to block the museum."

In early October 1997, the County Building Inspector sent a letter describing the proposed "nature center and museum" to residents of the surrounding area, notifying them that the Board of Zoning Appeals would hear the application on October 24.  The letter was based on information Mr. Meek had provided.

At the October 24 hearing on the application, several local residents appeared and expressed their opposition to the project.  They asked the Board to defer ruling on the application until more information about the proposed use was available.  Mr. Meek responded by stating that he planned to build a museum similar to the Cumberland Science Museum in Nashville, which would receive between two and three hundred visitors per day and would employ four or five workers. The Board granted the use on October 24, 1997.  Mr. Meek completed the  purchase of the property shortly thereafter.

On October 28, 1997, Zander Raines, the head of the local branch of the Christian Coalition, wrote about the zoning approval in that group's newsletter.  In the article he offered to arrange for Mr. Meek to speak to local churches.  A flyer about the museum, entitled "Ark Museum and Dinosaur Park," was attached to the newsletter.  It stated:

> . . . The Dinosaur Park will include a variety of sizes and species of dinosaurs and will tell how dinosaurs fit into the true Biblical history of the world.  The Ark Museum and Dinosaur Park will not only be a national resource center for churches, it will also be an evangelical outreach to those who might never go inside a church, but may be open to hearing the Gospel message in a different format.  With the Museum located on Interstate 40, only 25 miles from Nashville, Tennessee and with millions of people passing by it annually, the Museum will have an outreach unparalleled in America today.

On December 16, 1997, Brenda Williams, Albert Williams, Judy P. Pratt, Jack F. Pratt, Pam Sandoval, W.G. Neal and Kenneth Neal[1] filed a petition for a writ of *certiorari* in the Chancery Court of Wilson County challenging the Board of Zoning Appeals' approval of the application. The petition asserted that the Board's decision deprived them of due process by infringing on their right to receive correct and complete information, threatened the safety and welfare of the citizens in their area, and violated state and county zoning law. It stated that the predicted increase in traffic was of concern and claimed that deception by Mr. Meek and others produced a ruling based on fraud.

On December 19, the *Lebanon Democrat*, the local newspaper, ran a front page story on the Chancery Court lawsuit. The headline read, "Suit: Christian Coalition Misled a Zoning Request." The article reported the allegations in the petition.

On December 30, 1997, members of the local Christian Coalition responded with a "Guest Column." The headline read, "Christian Coalition Blasts 'False' Story." The column stated that the newspaper had published certain falsehoods including statements that: (1) a member of the Christian Coalition had appeared before the Zoning Board and purposefully misled that group, when, in fact, no member had appeared; and (2) Sean Meek failed to disclose that the project was a religious operation proposed and sponsored by the Tennessee Christian Coalition when, in fact, the Coalition was not sponsoring the project. However, the column stated, "We do not sponsor Project Creation, although we do support this effort, as we have supported and will continue to support any efforts by Christians to help turn our communities back to God." Mr. Meek also wrote a letter to the editor, which appeared the same day. His letter stated, "Project Creation is not affiliated with the Christian Coalition or any other organization."

The Defendants herein, who all live near the property where the proposed development was to be located, and who were Plaintiffs in the chancery court action challenging the zoning decision, wrote a letter to the editor responding to the above-mentioned letters. This letter, which was published January 8, was the basis for the underlying lawsuit. The letter detailed Defendants' objections to the proposed use of the property, including the unsuitability of the roads to handle the expected traffic. Although Plaintiffs herein objected primarily to those portions of the letter describing their objections to "deception" on the part of Plaintiffs and describing Plaintiffs' interrelationship with the Christian Coalition, we are setting out herein the full text of the letter. It stated:

> It is not our intention to enter into a public discussion about a matter that already is in the courts. However, we feel that two letters you published in the editorial page of Tuesday, Dec. 30, 1997 deserve some response from us. One of the letters is from several members of the Christian Coalition and the other is from Sean Meek, director of Project Creation.

---

[1] Hugo Sandoval, the remaining defendant in the underlying action, was not available to sign the petition. He did sign the letter to the editor.

Both concern a suit we have brought to force reconsideration of the suitability of the location and manner in which a zoning variance for a "Nature Museum and hiking trail"was obtained. This project is proposed by Sean Meek, as director of Project Creation.

This museum was first described to area property owners in a letter dated Oct. 7, 1997 by Kathy Dedman, county building inspector. This letter, based upon information supplied by Sean Meek, was sent to all the surrounding property owners alerting them to the Wilson Count Board of Zoning Appeals ("BOZA") meeting that was held on Friday, Oct. 24, 1997. In that letter it says "Frances Pratt had made application on appeal seeking to establish a *nature center and museum.*" (Emphasis ours). The letter then describes the location of the property, its size and mentions that it is zoned "A-1 Agriculture."

We contend that what we have called deception begins with this letter. Nowhere does the notice mention that Sean Meek, Project Creation, and/or the Christian Coalition are behind this museum and its intended use as later described in Christian Coalition literature.

In their letter to the newspaper, the Christian Coalition says: 'Falsehood: A Christian Coalition newsletter later disclosed for the first time that the project was being sponsored by the Tennessee Christian Coalition.' To refute this statement we offer the following sequence of events and direct quotes, and invite the readers to form their own conclusion:

At the BOZA meeting, Sean Meek, identifying himself as director of Project Creation, spoke of a nature center and museum. The BOZA minutes of the Oct. 24 meeting read: "Sean Meek stated that the use would be a history, science, and nature center for family and school use. There will be science activities, outside activities, and the use would have four to five employees. There would be self-guided tours on the site. The use would be a not-for-profit organization, but a fee would be charged for the facility. He was planning a 50 foot buffer for the use. There would be two buildings located on the site, a 75 foot by 75 foot building and a building 150 feet long. . . .

Shortly after the zoning was approved, the Christian Coalition newsletter, on CC letterhead, dated Oct. 28, 1997 and signed by Zander Raines, president of the Christian Coalition says: As some of you already know, on Friday, Oct. 24, there was a zoning meeting in the Wilson County courthouse that cleared the way for Project Creation to build a museum just off the Linwood Road Exit of I-40.." Mr. Raines continues: "The papers have already been signed and the work will be starting sometime next spring. In the meantime, Sean Meek, director of Project Creation, will be available for speaking engagements in local churches until the end of this

year. If you would like Sean Meek at your church, *just call me* (emphasis ours) and we will work out the details."

We ask, if the Christian Coalition and Project Creation are not intertwined, why is Mr. Raines arranging Mr. Meek's speaking engagements?

In addition, Mr. Meek, in a telephone conversation with a plaintiff, Albert Williams, led him to believe that the Coalition supports Project Creation. Further more, the Coalition's letter to the paper misquotes Mr. Williams as saying that "he supported the creation science museum concept as he felt any person should." In reality, Mr. Williams has never supported the museum proposal under any of its forms. As Mr. Williams learned more about the details of the project, his opposition to it became stronger. . . .

Everyone who knows the Trousdale Ferry Pike location under consideration knows that this is primarily a narrow and winding country road. It has no shoulders, no turning lane, and close to the proposed museum location there are two narrow, no-passing culvert bridges. Only 1.2 miles from where the narrow entrance to the museum would be, there is Tuckers Crossroad Elementary School. Obviously, we are concerned about the safety of the children as we are about the safety of farmers who traffic frequently on slow-moving equipment.

Ours is an honest, rural Christian community. We believe that in Tuckers Crossroads Elementary School we have the best all-around public school in the county. Our neighbors are good, moral, rural people who attend good Christian churches in which many are elders and deacons. We have people living in Tuckers Crossroads who are the fifth generation of their families to live in this community. We would like to preserve all these qualities in our community for our children.

We know that many organizations that begin as Christian and with good intentions end at times causing communities and even our nation problems when their tactics change, becoming more like cults. We are concerned that the needs and character of our community have not been considered in the planning of this Ark Museum and Dinosaur Park . The citation letter to the BOZA presented the now-former owner of the property as petitioning the change for a nature center. Then, Sean Meek and Project Creation appear at the meeting as the interested party. Later, the Christian Coalition, in their newsletters and other literature, appear as managers of Mr. Meek's speaking engagements and users of the center that is no longer called a nature museum but an Ark Museum and Dinosaur Park.

Our lawsuit is at this time the only way to force a new hearing of the zoning permit where our community's concerns and needs are considered. We are worried about the loss of peace and tranquility, and about the insecurity of increased traffic and of strangers coming next to our homes. Finally, we are also concerned that the support

services for a facility with 200-300 people a day do not exist in our community.

The way the project has been presented was deliberately evasive. It is our opinion that these are not tactics that Christ would approve of. The Bible teaches the positive virtues of honesty and truth while warning against worldly means such as dishonesty and deceit.

It is our hope that the Board of Zoning Appeals will conduct a future hearing and learning of our concerns, will realize that this activity is not proper for our area.

Shortly after the defendant's letter was published, Mr. Meek and Project Creation, Inc. filed the underlying action.[2] The complaint, signed only by Plaintiffs' counsel, alleged that Defendants had filed suit to enjoin the building of the nature center and science museum and, in pertinent part, that

On January 8, 1998, Defendants Neal, Pratt, Sandoval, and Williams intentionally and maliciously prepared and composed an editorial, published in the *Lebanon Democrat* an editorial which falsely imputed Plaintiffs as being aligned, sponsored, or otherwise connected with the Christian Coalition. . . In said newspaper article, Defendants not only align Plaintiffs with the Christian Coalition, but Defendants publically charge Plaintiffs with dishonesty, deliberate evasiveness, and compare Plaintiffs to being, "more like cults."

The complaint claimed that these actions constituted libel, and Plaintiffs sought $500,000 in compensatory damages. They also alleged that "in falsely aligning Plaintiffs with the Christian Coalition, [Defendants] acted with malice or with . . . gross and reckless negligence," and sought an additional $500,000 in punitive damages.

On February 9, 1998 Defendants responded by sending Mr. Meek, Project Creation, and their counsel a proposed motion for sanctions under Tenn. R. Civ. P. 11. Specifically, the proposed motion asserted that the complaint "was presented for an improper purpose and is without factual or legal basis." The motion asserted that the libel lawsuit was filed "in an effort to harass and intimidate Defendants because of their filing a cause of action" opposing the proposed zoning of the land owned by Project Creation, Inc. The motion also asserted that statements associating Plaintiffs with the Christian Coalition would not be defamatory, and that members of the Christian Coalition had published correspondence supporting Plaintiffs' project, but Plaintiffs had not sued those persons for defamation. The motion also alleged that the allegations in the complaint were without factual or legal basis because the letter to the editor was protected speech under the First Amendment. The Plaintiffs did not withdraw the complaint.

---

[2]The Plaintiffs did not originally sue the newspaper which printed the letter. The Defendants filed a motion to require Plaintiffs to add the newspaper and members of the Christian Coalition who had signed the guest column. The Plaintiffs later sought to add the newspaper as a defendant by amendment, but did not seek to add the members of the Christian Coalition. The record does not reflect any action by the trial court on either motion.

The Defendants later filed the Rule 11 motion they had sent to Plaintiffs, stating they had given Plaintiffs more than twenty-one days notice and Plaintiffs had refused to withdraw or amend their complaint. Defendants asked that the complaint be declared frivolous and contrary to Rule 11 and that sanctions be assessed against Mr. Meek, Project Creation, Inc., and their attorney, Mr. Hill. Defendants attached the Notice of Filing Rule 11 Motion along with a copy of a February 9 letter which had been sent to Plaintiffs along with the proposed motion.

The Defendants filed a motion to dismiss the lawsuit on March 16, 1998, arguing that the complaint failed to state a claim upon which relief could be granted. The trial court heard argument on Defendants' motion to dismiss and entered an order finding that as to the allegation "relative to the Christian Coalition and the Plaintiff's connection to the Christian Coalition is not the basis for a suit in libel and is, therefore, dismissed." The court held the remaining portions of the complaint and arguments on the motion to dismiss in abeyance "until such time as the Board of Zoning Appeals conducts its next hearing relative to the Project Creation project."

The Board of Zoning Appeals again addressed the zoning issue, on remand from the chancery court, on June 12, 1998. The Defendants' counsel participated, cross examining Mr. Meek and informing the Board that the County Health Department had disapproved the site for the proposed use, a fact which precluded approval of the use.[3]  The Board then unanimously denied the zoning application.

In February of 1999, Defendants renewed their motions to dismiss and for summary judgment in the libel case. They filed Mr. Meek's deposition and the transcript of the Board of Zoning Appeals proceeding as support for their motion. The court heard argument on April 12, 1999. On April 19, the trial court granted the motions, dismissed the complaint, and taxed costs against Plaintiffs. No appeal was taken from the dismissal, and the merits of the dismissal are not involved in this appeal.

The Defendants then filed a motion to alter and amend the April order seeking a judgment of $9,262.90 in attorney's fees and litigation costs "against Plaintiffs, Project Creation, Inc. and/or Sean Meek," pursuant to their earlier Rule 11 motion. In support of the motion, Defendants filed the affidavit of Judy Pratt, who attested to the amount of attorney's fees. The motion notified Plaintiffs that "The foregoing Motion is expected to be heard . . . at 8:30 a.m. on Monday, May 10, 1999." The Plaintiffs responded to the motion by asserting there was a basis for the libel claims.

The trial court heard arguments on the motion for Rule 11 sanctions. The Plaintiffs were represented by their original trial counsel, but were not present at the hearing. In its subsequently filed order, the court reiterated that it found nothing libelous in the letter by Defendants published in the *Lebanon Democrat* on January 8. The order states:

---

[3]According to the transcript from the second hearing before the Zoning Board, the rules and regulations governing the Wilson County Board of Zoning Appeals require a Health Department approval letter before applications for change of use can properly be granted.

The Court further found that Project Creation, Inc. and Sean Meek had filed this litigation to increase the costs of the pending litigation concerning the Chancery Court dispute involving the zoning case. . . [and there was] no factual or legal basis for a lawsuit against Defendants.

The court awarded Defendants judgment in the amount of $9,262.60, jointly and severally against Sean Meek and Project Creation, Inc. The court declined to sanction their attorney. No transcript of the proceeding is in the record.

After this ruling, Plaintiffs filed a motion to alter or amend the judgment,[4] arguing that no evidence supported the trial court's ruling that the libel suit was filed to harass and intimidate Defendants. The Plaintiffs also challenged the amount of attorney's fees awarded, asserting that defense counsel's itemized billing statement showed that a number of hours claimed were unnecessary or had been expended on the chancery court action. They further argued that the amount was far beyond that necessary to deter such conduct in the future. Finally, they asserted that monetary sanctions could not be assessed against a represented party under Tenn. R. Civ. P. 11.03(2) and, therefore, any portion of the sanctions attributable to a finding of no legal basis should be allocated to Plaintiffs' counsel.

A hearing on this motion was held on July 12, 1999, and Plaintiffs requested an evidentiary hearing. In ruling on Plaintiffs' motion to alter or amend, the trial court found that the court's earlier ruling on Rule 11 sanctions was based upon the record as a whole and that the basis for the sanctions were subsections (1) and (3) of Tenn. R. Civ. P. 11.02. The trial court found that no evidentiary hearing was warranted because Plaintiffs had notice of the earlier hearing and had an opportunity to be present and to present evidence. The court further found that the litigation fees and costs involved in the zoning lawsuit and in this libel action "were interrelated and any attorneys fees involved after January 22, 1998 [the date the libel suit was filed] were properly considered by the Court, subject to the allowance for monies paid by Defendants for the retainer fee."

On appeal, Project Creation and Mr. Meek challenge the sanctions on three bases: (1) there was insufficient evidence to support the trial court's finding that the libel lawsuit was filed for an improper purpose; (2) the imposition of sanctions was procedurally defective, and violative of due process, because Plaintiffs did not have an opportunity to be heard; and (3) the amount of the sanctions was greater than that necessary to deter and was based on fees for attorney time spent on another lawsuit.

## II. Rule 11 - Purpose and Interpretation

Rule 11 imposes upon litigants and attorneys the obligation to avoid conduct that frustrates the goals of Tenn. R. Civ. P. 1 for just, speedy, and inexpensive determination of every action.

---

[4]Appellate counsel, Mr. Gonzalez, as well as trial counsel, Mr. Hill, represented Plaintiffs at the post-judgment hearing on the motion to alter or amend.

MACLEAN, BONNYMAN & BRANDT, TENNESSEE PRACTICE § 11:1. The purpose of Rule 11, both state and federal, is to curb abuse in the litigation process by deterring baseless filings which put "the machinery of justice in motion, burdening courts and individuals alike with needless inconvenience, expense, and delay." *Andrews v. Bible*, 812 S.W.2d 284, 292 (Tenn. 1991); *see also Dandar v. Alderman*, 158 F.3d 516, 528 (11th Cir. 1998) ("deterrence remains the touchstone of the Rule 11 inquiry"). This court has recognized that the role of Rule 11 is "to discourage the filing of suits for 'any improper purpose, such as to harass to or cause unnecessary delay or needless increase in the costs of litigation." *Justice v. Coker*, Nos. 03A01-9606-CV-00191 and 03A01-9606-CV-00192, 1996 WL 622659 at *1 (Tenn. Ct. App. Oct. 29, 1996).

In 1991, our Supreme Court noted:

the development of Rule 11 jurisprudence is far more advanced in the federal courts than in the state system because the provision has been part of the Federal Rules of Civil Procedure since 1938, in contrast to Tennessee's version of Rule 11 which became law in 1971 as part of the Tennessee Rules of Civil Procedure. While there have been hundreds, if not thousands, of opinions construing Rule 11 in the federal system, our appellate courts have only once issued a reported opinion on the topic . . . It is for this reason that this Court finds it appropriate to examine federal decisional authority concerning the nature of the questions posed by the instant case.

*Andrews v. Bible*, 812 S.W.2d at 287.

Both the federal rule and the Tennessee rule have been amended since our Supreme Court made that statement in *Andrews v. Bible*.[5] However, the Tennessee rule remains consistent with the federal rule, and we continue to find federal law helpful in the interpretation of Tennessee's Rule 11. A well-known and oft-cited treatise has described the most recent changes to the federal rule as follows:

Rule 11 was amended in 1993, when the explicit scope of the rule, its certification requirement, and the sanctions available for its violation were changed dramatically.

As the Advisory Committee Notes state, these revisions broaden the scope of attorneys' and litigants' obligation to refrain from conduct that frustrates the aims of Rule 1 and call for greater restraint in considering the imposition of sanctions.

\*\*\*

The sanction should be imposed on the persons - whether attorneys, law firms, or

---

[5] Fed. R. Civ. P. 11 was amended in 1993; Tenn. R. Civ. P. 11 was amended in 1995. The Advisory Commission Comments to the 1995 changes in Tenn. R. Civ. P. 11 note that the amended rule "tracks the current federal rule."

parties - who have violated the rule or who may be determined to be responsible for the violation. The person signing, filing, submitting or advocating a document has a nondelegable responsibility to the court, and in most situations should be sanctioned for a violation.

Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE, § 1331 (2001 Supp.)

### III. Rule 11 - Provisions

Tenn. R. Civ. P. 11.02 provides in pertinent part:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Tenn. R. Civ. P. 11.03 provides:

If, after notice and a reasonable opportunity to respond, the court determines that subdivision 11.02 has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision 11.02 or are responsible for the violation. . .

> (2) A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (a) and (b), the sanction may consist of, or include, directives of nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, and

order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

> (a) Monetary sanctions may not be awarded against a represented party for a violation of subdivision 11.02(2). . . .

### IV. Sanctions Against Represented Party Only

Herein, the trial court granted Defendants' motion for sanctions and initially found that there was no factual or legal basis for the libel lawsuit and that Plaintiffs filed this action to increase the costs of the other lawsuit regarding zoning. While the trial court assessed sanctions against Plaintiffs, it refused to sanction Plaintiffs' counsel and later clarified its sanction award to state that the finding was based on Tenn. R. Civ. P. 11.02(1) and 11.02(3), omitting the "no legal basis" ground.

Thus, our initial inquiry is whether Rule 11 authorizes the trial court to impose sanctions against a party who is represented by counsel, while not imposing sanctions against the attorney. Tenn. R. Civ. P. 11.02 authorizes a court to impose sanctions against "the attorneys, law firms, or parties that have violated subdivision 11.02 or are **responsible for the violation**." That language necessarily raises the question of when a represented party can be found to have violated 11.02 or to have been responsible for such violation. That question is answered in one particular by Tenn. R. Civ. P. 11.03(2)(a) which disallows the award of monetary sanctions against a represented party for violation of the provision requiring certification that the claims in a filed paper have a basis in law. By omission, this subsection implies that a represented party can be sanctioned for violation of either of the other two provisions of 11.02, as the trial court did herein.

The United States Supreme Court recognized that represented parties may be sanctioned for Rule 11 violations in *Business Guides v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 111 S. Ct. 922 (1991). The Court determined that a represented party who signs a pleading or other paper filed in litigation may be sanctioned monetarily. 111 S. Ct. at 931. The Court held that "a represented party who signs his or her name bears a personal, nondelegable responsibility to certify the truth and reasonableness of the document." *Id.* The Supreme Court also held, "Rule 11 imposes an objective standard of reasonable inquiry on represented parties who sign papers or pleadings," but stated, "We have no occasion to determine whether or under what circumstances a nonsigning party may be sanctioned." *Id.* at 934-35.

In the case before us, Mr. Meek did not sign the complaint, for himself or on behalf of Project Creation. Although the Supreme Court did not reach the issue of nonsigning parties in *Business Guides,* several lower federal courts have considered whether a court may sanction a nonsigning represented party, and have concluded that it may. *See, e.g., United States v. Internat'l Brotherhood of Teamsters*, 948 F.2d 1338, 1344 (2d Cir. 1991) ("Rule 11 subjects the client - 'the represented

party' - to sanctions even if he has not signed the offending paper."); *Bergeron v. Northwest Publications Inc.*, 165 F.R.D. 518, 521 (D. Minn. 1996); *Continental Ins. Co. v. Construction Indus. Servs. Corp.*, 149 F.R.D. 451, 454 (E.D.N.Y. 1993) ("[The section regarding sanctions] plainly contemplates the imposition of sanctions on a represented party who does not sign a pleading, motion, or other paper. Otherwise, the reference in that sentence to [responsible parties] is superfluous, and the sentence would only refer to the 'person who signed' a pleading, motion, or other paper."); *Donohoe v. Consolidated Operating & Prod. Corp.*, 139 F.R.D. 626, 631 (N.D. Ill. 1991) (noting that the Supreme Court, in *Business Guides*, declined to decide whether a nonsigning party might be held liable, but deciding that a literal reading of the rule required such a holding).

Tennessee courts have also determined that non-signing represented parties may be liable for Rule 11 violations. *Alside Supply Ctr. v. Smith Heritage Siding Co., Inc.*, No. 03A01-9702-Ch-00069, 1997 WL 414982 at *2 (Tenn. Ct. App. July 25, 1997) (no Tenn. R. App. P. 11 application filed) (a non-signing party may be liable for Rule 11 violations); *Al-Haddad v. Ritter*, No. 01A01-9608-CV-00389, 1997 WL 44389 at *1 (Tenn. Ct. App. Feb. 5, 1997) (no Tenn. R. App. P. 11 application filed) ("anyone who 'advocates' a pleading certifies that the pleading is not filed to harass or delay and that a reasonable inquiry has been made to discover the facts alleged. A non-signing party, therefore, falls under the provisions of Rule 11.")

Because Tenn. R. Civ. P. 11.03 permits sanctions against a represented party "responsible for the violation," regardless of whether that party actually signed papers or pleadings, a represented party may be held liable for a Rule 11 violation. Thus, when the party is "responsible for the violation," then sanctions against the party alone are appropriate.[6]

### V. Standard for Measuring Conduct

The trial court found Plaintiffs had violated two of the three substantive prongs of Rule 11: the claims had no factual basis and the lawsuit was brought for an improper purpose. Plaintiffs argue that the evidence preponderates against the trial court's finding that the complaint was filed for an improper purpose. Mr. Meek maintains that, because he is not a lawyer and Project Creation is not a sophisticated corporate entity, a court must review their actions under a subjective standard to determine whether the sanctions were appropriate. They also assert that improper motive must be determined by applying a subjective standard, relying on language in *Andrews v. Bible*, 812 S.W.2d at 288, that "except as to improper purpose, subjective good faith is not a defense to Rule 11 sanctions."

It is well settled that an attorney's conduct is to be measured by a test of objective reasonableness under all the circumstances. *Andrews*, 812 S.W.2d at 288; *McGaugh v. Galbreath*, 996 S.W.2d 186, 194 (Tenn. Ct. App. 1998). The United States Supreme Court, in *Business Guides*,

---

[6]For example, in *Devine v. Wal-Mart Stores, Inc.*, 52 F. Supp.2d 741, 746 (S.D. Miss. 1999), the trial court imposed sanctions only on the plaintiff upon learning that the factual allegations in the complaint were false, and that plaintiff had encouraged the "witness" to lie under oath. Sanctions were not imposed upon the attorney because the plaintiff's affidavit and counsel's motion to withdraw indicated that the attorney did not know that the testimony was false. *Id.* at 745.

imposed the same standard on a represented party who signed papers or pleadings. 498 U.S. at 554, 111 S. Ct. at 935-36. We see no reason to impose a different standard upon a nonsigning party. *See Temple v. WISAP USA in Texas*, 152 F.R.D. 591, 619 (D. Neb. 1993) ("In determining whether a violation of Rule 11 has occurred, this court must apply an "objective reasonableness" standard to determine whether the pleading was frivolous, groundless, or advanced for an improper purpose."). Although not universally true, most federal courts have applied an objective standard when considering whether a violation of the improper purpose restriction has occurred. WRIGHT AND MILLER, § 1335 at 85 (1990 and 2001 supp.).

As Plaintiffs have asserted, this court has determined that use of an objective standard of reasonableness of inquiry should be applied to a sophisticated non-signing party, relying on federal decisions on the issue. *Alside Supply Ctr.*, 1997 WL 414982 at *3. We do not conclude, however, that the *Alside* opinion requires that a different standard be applied to non-sophisticated parties. In fact, this court has stated, in a case involving sanctions against represented parties who were not attorneys that "the test to be applied in Rule 11 cases is objective reasonableness under all the circumstances." *Al-Haddad v. Ritter*, 1997 WL 44389 at *2 (citing *Andrews v. Bible*, 812 S.W.2d 284). In *Al-Haddad*, this court measured the parties' conduct by a test of objective reasonableness. *Id.*

In addition, we have stated the test, in a case where the trial court found a counterclaim to be without basis and interposed for the improper purpose of causing unnecessary delay and/or needless increase in the cost of litigation, as follows:

> A trial court is free to impose appropriate sanctions under Rule 11 if it determines that an **objectively reasonable party** and/or their attorney would not have asserted a particular claim.

*Rayburn v. E.J. Constr. Eng'g., Inc.*, No. 03A01-9306-CV-00212, 1994 WL 27616 at *5 (Tenn. Ct. App. Feb. 3, 1994) (no Tenn. R. App. P. 11 application filed) (emphasis added).

We conclude the test to be applied, to a party or an attorney, regarding improper purpose or the other prongs of Tenn. R. Civ. P. 11.02, is one of objective reasonableness under all the circumstances. That standard allows the court to take many factors into consideration.[7] Such a standard certainly allows a trial court to consider a party's lack of legal sophistication when determining whether to impose sanctions.

We must reject Plaintiffs' other argument in this regard, however. Plaintiffs essentially argue that without Mr. Meek's testimony regarding his motivation for bringing the lawsuit, the trial court could not conclude his motivation was improper. Relying upon the "subjective standard" argument,

---

[7]The Advisory Committee Notes to the 1993 Amendments to Fed. R. Civ. P. 11 list a number of factors appropriate for a court to consider in deciding whether to impose a sanction, including whether the responsible party is law-trained. The Notes are quoted extensively later in this opinion.

Plaintiffs assert the subjective reasons for filing a complaint "cannot possibly be weighed without weighing the party's own statements whether by live testimony or other admissions." We cannot accept that reasoning. First, we conclude that Plaintiffs' conduct is subject to a test of objective reasonableness under all the circumstances, and the court is entitled to consider any evidence in the record relevant to that inquiry. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1366 (9th Cir. 1990) ("The test for improper purpose is objective, and . . . it was not an abuse of discretion to find that [counsel's] outward behavior manifested an improper purpose . . ."). This court has upheld a trial court's imposition of sanctions for "filing a large number of repetitive and unnecessary motions that have required the court on repeated occasions to consider the same issues based on similar if not identical facts where the law governing such circumstances has not changed." *Wright v. Quillen*, 909 S.W.2d 804, 815 (Tenn. Ct. App. 1995). This court was satisfied from the record of the litigation that this conclusion was correct and the violation "obvious." *See also Al-Haddad v. Ritter*, 1997 WL 44389 at *3 (reversing the trial court, but both the trial court and this court based the holding solely on the record in the underlying case).

Second, the reasoning advanced by Plaintiffs would allow a party to strategically prevent a court from imposing sanctions by declining to appear for a hearing or simply testifying that his or her motives were proper.[8] Finally, in the case before us, Mr. Meek had the opportunity to present evidence of his reasons for filing this lawsuit, but did not.[9] Just because he chose not to testify, the trial court was not precluded from relying on other evidence to determine whether Rule 11 has been violated and whether sanctions were justified.

## VI. The Findings Herein

In reviewing a trial court's determination under Rule 11, appellate courts apply an abuse of discretion standard to all aspects of the ruling. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 2461, 110 L. Ed.2d 359 (1990); *Krug v. Krug*, 838 S.W.2d 197, 205 (Tenn. Ct. App.1992) (finding Tennessee has adopted the federal "abuse of discretion" and "deferential" standards in part because determinations of whether Rule 11 has been violated involve "fact-intensive, close calls").

We, then, review the trial court's decision that Plaintiffs violated Rule 11 using a standard that:

> requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. While we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will

---

[8] We do not suggest that Plaintiff's absence from the hearing was strategic.

[9] Thus, Plaintiffs did lay the evidentiary predicate for a defense of subjective good faith.

not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

*State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000) (citations omitted).

Our review necessarily depends on the condition and completeness of the record. The appellant bears the burden of showing that the evidence presented in the trial court preponderates against the findings of fact. *Coakley v. Daniels,* 840 S.W.2d 367, 370 (Tenn. Ct. App.1992). To this end, the Tennessee Rules of Appellate Procedure require the appellant to prepare "a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b); *Johnson v. Harbin*, 926 S.W.2d 236, 239 (Tenn.1996) In the absence of a transcript or statement of the evidence, a presumption arises that the record is sufficient to support the trial court's judgment, requiring this court to affirm the judgment. *Coakley*, 840 S.W.2d at 370; *McDonald v. Onoh,* 772 S.W.2d 913 (Tenn. Ct. App.1989); *Irvin v. City of Clarksville*, 767 S.W.2d 649, 653 (Tenn. Ct. App.1988).

In Rule 11 practice, the party seeking relief bears the burden of proving that conduct warranting sanctions occurred. *See, e.g., McGaugh v. Galbreath*, 996 S.W.2d 186, 194 (Tenn. Ct. App.1998). Then the burden shifts to the party opposing sanctions to present a defense. Here, although their counsel participated, Plaintiffs did not attend the hearing on the sanctions motion, or offer any evidence countering that which Defendants produced. As the trial court observed at the hearing on the plaintiff's motion to alter or amend, Mr. Meek

> was on notice of this hearing. He could have presented proof. He did not present proof. I don't know why, but this hearing went on for a good long time, about an hour, hour and a half, . . . But it went on and on, but I kept coming back to the pleadings and the letters to the editor.

No transcript or statement of the evidence from the sanctions hearing was presented to this court. Accordingly, we must presume that the evidence supported the trial court's finding that Plaintiffs were responsible for the violation, that the lawsuit was brought for an improper purpose, and that the libel claims were without factual support. *King v. King*, 986 S.W.2d 216, 220 (Tenn. Ct. App. 1998).

As we have stated, the trial court was entitled to rely upon any evidence in the record in determining whether a violation of Rule 11 had occurred. In addition to the pleadings filed in this lawsuit, at the time the motion for sanctions was being considered, the record contained Mr. Meek's deposition and the transcript from the meeting of the Board of Zoning Appeals in which Project Creation's application was denied. The lack of merit of the libel claims alleged in the complaint, the timing of the complaint's filing, so close on the heels of Defendants' filing of the petition for *certiorari*, and the content of the letters to the editor written by Mr. Meek, local members of the Christian Coalition, and Defendants provide evidence of an improper purpose. Moreover, Mr.

Meek's testimony makes clear his close connection with local members of the Christian Coalition. He admitted that he had authorized the the head of the local branch of the Christian Coalition to arrange speaking engagements at local churches for him "in a general sense." Mr. Meek admitted that when he gave the head of the local Christian Coalition permission to arrange these speaking engagements, he asked the head to "keep a low profile" on the philosophical aspects of the museum. From all of this, we find that the trial court's decisions that Rule 11 was violated and sanctions were justified are supported by the evidence.

In a related argument, Plaintiffs also assert that due process requires that the party have the opportunity to be heard. They assert that they requested an evidentiary hearing, and their request was denied. From the record, it appears that request was made after the sanctions hearing and after the trial court's imposition of sanctions. They also assert that this court's opinion in *Alside* requires an evidentiary hearing before sanctions can be imposed. We do not disagree with this court's statement in *Alside* that it is prudent for the court to hold an evidentiary hearing before imposing sanctions where there are disputed facts or issues of credibility. *Alside*, 1997 WL 414 982 at *4. In the case before us, however, Plaintiffs were given the opportunity to present evidence; they were notified of the hearing on the Rule 11 motion, and their counsel attended.

Plaintiffs also assert that their due process rights were abridged because they received no notice that they might be sanctioned for filing the libel action for an "improper purpose." They contend, "Throughout most of the motions and memorand[a] submitted by Defendants in which they requested sanctions, they referred generically to Rule 11 and repeatedly stated that the case was 'frivolous' and without 'legal merit.' This [implies] that the basis was one of violation by the attorney."

The record refutes this contention. The motion for Rule 11 sanctions, filed on March 12, 1998, states in pertinent part:

> Come Defendants, by and through their attorney . . . and move for sanctions under the provisions of Rule 11 of the Tennessee Rules of Civil Procedure. Defendants stated that the Complaint filed against them on January 22, 1998 was presented for an improper purpose and is without factual or legal basis.

The motion also clearly stated that Defendants sought "monetary sanctions against Project Creation, Inc., Sean Meek, and Ruston L. Hill, Attorney at Law." The Plaintiffs were on notice that monetary sanctions were sought against them, and they had opportunity to be heard, but declined to attend or to present evidence. This issue is without merit.

## VI. Amount of the Sanctions

As with other aspects of a Rule 11 decision, we review the trial court's determination of the amount of the sanctions under an abuse of discretion standard. The Plaintiffs maintain that the amount they were sanctioned was far greater than necessary to deter future filings in violation of Rule 11. They also maintain that a portion of the attorney fees and costs awarded to Defendants were not related to the defense of this action, but were actually incurred in the chancery court case related to the zoning issue.

The amount of sanctions must be limited to that necessary to "give effect to the rule's central goal of deterrence." *Andrews*, 812 S.W.2d at 288. One of the principal purposes behind the 1993 change to Fed. R. Civ. P. 11, which parallels the 1995 change to Tenn. R. Civ. P.11, involved the court's assessment of sanctions.

> The 1993 amendments to Rule 11 were motivated by a desire to curb some of the abuses surrounding Rule 11 motion practice. By adding a safe harbor provision and reducing incentives to private parties to seek sanctions under the Rule through its emphasis on the use of fines paid to the court rather than the opposing party, the new Rule 11 seeks to reduce the litigation that the prior Rule had generated. In addition, by making the imposition of sanctions discretionary rather than mandatory and emphasizing the importance of a party's ability to pay as a factor in determining whether to levy sanctions or not, the new Rule seeks to protect litigants with less resources and prevent the unfair application of the Rule.

WRIGHT V. MILLER, § 1331 (2001 Supp.)

The Advisory Committee Notes to Fed. R. Civ. P. 11, as revised in 1993, are enlightening. In pertinent part, they state:

> The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities . . . the rule does not attempt to enumerate the factors a court should consider in deciding whether to impose a sanction or what sanctions would be appropriate in the circumstances; but, for emphasis, it does specifically note that a sanction may be nonmonetary as well as monetary. Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount

is needed to deter similar activity by other litigants; all of these may in a particular case be proper considerations. The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons.

Fed. R. Civ. P. 11, Advisory Committee Notes to 1993 Amendments.

Therefore, the amount of monetary sanctions is to be set with the goal of deterrence in mind. Although Plaintiffs assert that the amount awarded exceeded that necessary to deter future filings, they point to no evidence in the record to support that argument. As discussed earlier, no transcript or statement of the evidence from the sanctions hearing was filed. Therefore, we must presume that the trial court's determination regarding the amount necessary for deterrence is supported by the record. As long as the trial court's decision is supported by the evidence, made upon appropriate legal principles, and within the range of acceptable alternatives, we will not disturb that decision. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d at 248.

Additional limitations apply, however, where the sanction involves payment to the other party of expenses incurred because of the violation. The court may, "on motion and [if] warranted for effective deterrence [enter] an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a *direct result* of the violation." Tenn. R. Civ. P. 11.03(2) (emphasis added).

Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty. However, under unusual circumstances, particularly for (b)(1) [improper purpose] violations, deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation. Accordingly, the rule authorizes the court, if requested in a motion and if so warranted, to award attorney's fees to another party. **Any such award to another party, however, should not exceed the expenses and attorney's fees for the services directly and unavoidably caused by the violation of the certification requirement.** If, for example, a wholly unsupportable count were included in a multi-count complaint or counterclaim for the purpose of needlessly increasing the cost of litigation to an impecunious adversary, any award of expenses should be limited to those directly caused by inclusion of the improper count, and not those resulting from the filing of the complaint or answer itself.

Fed. R. Civ. P. 11, Advisory Committee Notes to 1993 Amendments.

Plaintiffs assert that the sanction should be limited to the amounts necessary to defense of this lawsuit; that the award includes services provided in the zoning case; and that some entries in the attorney's bill are not specific to either case. They also challenge some activities as not "reasonably necessary." Defendants assert that they paid counsel $3000 for fees and expenses related to the zoning case and that actions taken by their counsel in the zoning case, including the deposition of Mr. Meeks and the second hearing before the Board of Zoning Appeals, were "necessary portions of the Circuit Court record in order to show the lack of merit in Plaintiffs' lawsuit."

One of the Defendants, Judy Pratt, submitted an affidavit with detailed bills from Defendants' counsel reflecting the expenses and attorney's fees sought. The attorney billed Defendants, who were also his clients as Plaintiffs in the chancery court lawsuit, for his services in both lawsuits. He provided them with combined bills, the total of which was $11,865 for legal services and $692.40 for expenses. In the affidavit, Plaintiffs subtracted from this total the $3,000 retainer Defendants paid their counsel when they hired him to challenge the Zoning Board's approval of Mr. Meek's application and $294.50 they paid in initial expenses related to that lawsuit. Thus, the total amount requested was $9,262.90, which represented fees and costs associated with both lawsuits.

In its initial order awarding sanctions, the trial court awarded judgment in the amount of $9,262.90, based upon its finding that the lawsuit had been filed to increase the costs of the pending zoning case. That order begins with a recitation that the trial court considered the motions filed, the record as a whole, including affidavits presented, and argument of counsel.

The trial court again considered the amount of sanctions in the hearing on Mr. Meek's motion to alter and amend the judgment. In response to the motion, counsel for Defendants had filed an affidavit stating he had represented Defendants in two actions in two courts, but that the factual basis of the two lawsuits was the same. "Much of the work in the Circuit Court and Chancery court overlapped since the factual basis was the same. The affidavit of Ms. Judy Pratt denotes legal fees and litigation costs that have been incurred by Defendants in their legal battle concerning Noah's Ark." Following the hearing, the court entered an order stating:

> based upon the record, the Court was of the opinion that the litigation fees and costs involved in the Circuit Court case and the Chancery Court action were interrelated and any attorney fees involved after January 22, 1998, [the date the libel complaint was filed] were properly considered by the Court, subject to the allowance for monies paid by Defendants for the retainer fee. Therefore, the Court refused to alter or amend the judgment in the amount of $9,262.90.

The amount of sanctions awarded as attorney fees and expenses incurred by the other party must be supported by evidence in the record. *Wright v. Quillen*, 909 S.W.2d at 815. It is clear from the record that not all the fees and expenses awarded were attributable directly and unavoidably to the complaint filed in this lawsuit. The pending zoning case would have proceeded, requiring Defendants herein to incur attorney fees and expenses even if this libel action had never been filed.

While we do not doubt that some actions taken in the zoning case were also related to defense of this libel action, we cannot, based on the record before us, accept the conclusion that all legal work done on behalf of these clients after the date of the filing of this lawsuit was the result of Plaintiffs' violation of Tenn. R. Civ. P. 11. For purposes of assessing sanctions, the issue is what expenses were incurred because of the filing of the libel lawsuit for an improper purpose and without factual support.

Accordingly, we find that the trial court erred in assessing the total of attorney fees and costs associated with both lawsuits which were incurred after the filing date of this lawsuit as sanctions, and remand for a recalculation of the amount owed. Only those fees and costs determined to have directly resulted from the filing of this action may be assessed as sanctions and taxed to Plaintiffs. We agree that the trial court may consider, as a direct result of the filing of this lawsuit, any increased costs to Defendants herein incurred in the zoning case, since the trial court found the improper purpose to be to increase those costs. We also agree that services needed in both lawsuits may be considered and appropriately apportioned.

V. Conclusion

We affirm the imposition of sanctions on Plaintiffs, but remand the case to the trial court for a recalculation of the amount of sanctions. Costs of this appeal are taxed one half to Appellants and one half to Appellees, for which execution may issue if necessary.

_____<br>PATRICIA J. COTTRELL, JUDGE