FILED
09/16/2019
Clerk of the
Appellate Courts

# CIRCUITIN THE COURT OF APPEALS OF TENNESSEE AT NASHVILLE
### August 13, 2019 Session

## STEVEN SHAO EX REL ELIZABETH SHAO v. HCA HEALTH SERVICES OF TENNESSEE, INC. ET AL.

### Appeal from the Circuit Court for Davidson County
No. 16C2469      Don R. Ash, Senior Judge

_____

### No. M2018-02040-COA-R3-CV
_____

All claims on the plaintiff's case in chief in this case have been non-suited. This is an appeal only from three orders for sanctions entered against plaintiff's attorney. In the first order, the trial court awarded opposing counsel attorney's fees and prohibited the attorney from making any threatening, insulting, or embarrassing communications regarding opposing counsel. In the second and third orders, the trial court found that the attorney had continued the prohibited conduct, suspending him from the practice of law in the Circuit Courts of Davidson County for a total of 240 days and awarding opposing counsel their attorney's fees. The attorney appealed the three orders. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Brian P. Manookian, Nashville, Tennessee, Pro se.[1]

C. J Gideon, Jr. and J. Blake Carter, Nashville, Tennessee, for the appellee, HCA Health Services Of Tennessee, Inc. d/b/a Summit Medical Center.

Phillip North, J. Eric Miles and Matthew J. Buchbinder, Nashville, Tennessee, for the appellees, Toby Smith and Middle Tennessee Pulmonary Associates, PLLC.

---

[1] Appellant did not participate in oral argument.

## OPINION

## BACKGROUND AND PROCEDURAL HISTORY

This appeal arises from a healthcare liability action filed on September 16, 2016, in the Circuit Court of Davidson County (the "trial court"), in which Plaintiff Steven Shao, the surviving husband of Elizabeth Shao, sued Toby Smith, M.D., Middle Tennessee Pulmonary Associates, PLLC, and HCA Health Services of Tennessee, Inc., doing business as Summit Medical Center; however, the only issues before this Court pertain to three orders entered by the trial court that imposed various sanctions against Mr. Shao's counsel, Brian Manookian. In the underlying healthcare liability action, Defendants Dr. Smith and Middle Tennessee Pulmonary Associates, PLLC were originally represented by Nashville attorney Michael Geracioti of the firm Levine, Orr and Geracioti. Several months after the case was filed, Mr. Geracioti unexpectedly passed away on the morning of March 16, 2017. On that same day, at 12:48 PM, Mr. Manookian's partner, Brian Cummings, sent an email to Mr. Geracioti's associate, expressing his condolences and alerting her to outstanding items due in several cases. Then, at 3:58 p.m., on the same day, Messrs. Cummings and Manookian filed a Motion for Default Judgment against Mr. Geracioti's clients, Dr. Smith and Middle Tennessee Pulmonary Associates, PLLC. Four days later, on March 20, 2017, Mr. Manookian sent a letter to Mr. Geracioti's associate, threatening to assert an $8,000,000 claim against her clients, her law firm, and the estate of Mr. Geracioti. A hearing was subsequently held, and, on April 24, 2017, the trial court entered an order, denying Messrs. Cummings and Manookian's Motion for Default Judgment. Additionally, the trial court publically reprimanded Messrs. Cummings and Manookian "for conduct that is unbecoming [of] members of the Bar and officers of the court[,]" stating the following:

> This Court is profoundly disappointed in the conduct of plaintiff's counsel and the timing and manner in which the Motion for Default was presented. Being a zealous advocate does not mean that one abandons all sense of professionalism, courtesy and common decency. It is clear that counsel for plaintiff was attempting to gain a tactical advantage by aggressively pursuing the claim for default on the very day of Mr. Geracioti's death[.]

On August 17, 2017, attorney C.J. Gideon, counsel for Defendant HCA Health Services of Tennessee, mailed a letter to Mr. Manookian setting forth alleged deficiencies in discovery responses. Mr. Manookian responded via email on August 19, 2017. The contents of Mr. Manookian's August 19, 2017 email—which referenced Mr. Gideon's son and daughter—served as the basis for a motion for sanctions against Mr. Manookian, filed by Mr. Gideon on August 24, 2017.[2] The trial court held a hearing on the motion on

---

[2] When Mr. Gideon brought the August 19, 2017 email to the attention of the trial court, he redacted the names and identities of his son and daughter. Mr. Manookian, however, in his response to

- 2 -

September 21, 2017 and, on September 28, 2017, Judge Thomas Brothers entered an order sanctioning Mr. Manookian (the "September 2017 Order"). In the September 2017 Order, the trial court found that Mr. Manookian's August 19, 2017 email "can only be construed as a threat against the livelihood of Mr. Gideon's child." The trial court continued: "At a minimum this communication was a thinly veiled threat to embarrass Mr. Gideon, his child, and his family. It can also be viewed as a blatant act of attempted intimidation meant to secure some tactical advantage over opposing counsel." Finding Mr. Manookian's conduct "repellent and shameful[,]" the trial court prohibited Mr. Manookian "from making any communication to counsel in this case that threatens, insults, disparages, demeans, or embarrasses them and/or their family members" and awarded Mr. Gideon $5,550.00 in attorney's fees.[3]

Following Mr. Geracioti's death, Phillip North of the law firm North, Pursell & Ramos, PLC was substituted as counsel of record for Defendants Dr. Smith and Middle Tennessee Pulmonary Associates, PLLC. On June 15, 2018, Mr. North filed a motion for sanctions against Mr. Manookian due to an email sent by the latter to the former on Good Friday, March 30, 2018. The email is reproduced, in part, as follows:

> Counsel,
>
> I am E-Mailing to provide written notice that Plaintiff intends to pursue sworn testimony regarding ex parte statements made by [Judge] Brothers about this case . . . via affidavit from the Honorable Hamilton Gayden.
>
> In addition . . . Plaintiff does not oppose:
>
> 1. Judge Gayden disclosing his actual experience, and resulting opinion, of Phillip North's reputation for truthfulness, honesty and fidelity; and/or
> 2. Judge Gayden disclosing his actual experience, and resulting opinion, on Phillip North's propensity for dishonesty, exaggeration, and falsehood.
>
> I hope you have a wonderful and relaxing Easter weekend.

In the email, Mr. Manookian copied all counsel in the case as well as the Special Master for the Circuit Courts of Davidson County. After Mr. North filed the June 15,

---

the August 24, 2017 motion for sanctions, attached a complete copy of the email without redacting the names of Mr. Gideon's children.

[3] The trial court cautioned Mr. Manookian with a warning at the end of the September 2017 Order: "Once again, this Court sincerely urges Mr. Manookian to learn from this unnecessary and unfortunate situation and in the future to conduct himself in a manner that is worthy of his profession." Mr. Manookian paid this award of attorney fees against him and he is not appealing this award.

- 3 -

2018 motion for sanctions, Mr. Manookian sent another email to Mr. North on June 22, 2018, wherein he alleged that Mr. North had falsified the certificate of service on the June 15, 2018 motion for sanctions.[4]  This email served as the basis for another motion for sanctions against Mr. Manookian, filed by Mr. North on July 20, 2018.  On July 31, 2018, the Tennessee Supreme Court ordered that the June 15 and July 20, 2018 motions for sanctions be heard by Senior Judge Don Ash.[5]  On September 28, 2018, Judge Ash granted both motions, suspending Mr. Manookian from the practice of law in Davidson County Circuit Courts for 60 days and awarding Mr. North his attorney's fees in the amount of $37,164.00 (the "September 2018 Order").[6]  Additionally, the trial court ordered Mr. Manookian to complete an ethics course "focusing on civility and professionalism."  Regarding Mr. Manookian's civility and professionalism, the trial court stated the following:

> Sadly, Mr. Manookian has traveled down a path where he has chosen to continue verbal attacks on opposing counsel rather than to follow a judge's explicit orders.  He has been reprimanded by a court, instructed to stop this unprofessional behavior, and forced to pay attorney fees for his actions; yet, he continues this vendetta.  His actions not only damage his reputation as a professional, but also blemish the legal profession and the integrity of this Court.

A week prior to the entry of the September 2018 Order, the Tennessee Supreme Court, on September 21, 2018, issued an Order of Temporary Suspension (the "Supreme Court Order"), suspending Mr. Manookian from the practice of law across the entire state of Tennessee.  *See In re Brian Phillip Manookian*, *BPR #026455*, No. M2018-01711-SC-BAR-BP (Tenn. Sept. 21, 2018) (hereinafter, "*In re Manookian I*").

Before the entry of the September 2018 Order, Mr. Manookian, on August 4, 2018, had sent yet another threatening email to Mr. North.  This email served as the basis for yet a third motion for sanctions against Mr. Manookian, filed by Mr. North on August 10, 2018.  In the email, Mr. Manookian exhibited the same disturbing behavior and conduct prohibited by the September 2017 and 2018 Orders.  For example, Mr. Manookian revealed that he knew Mr. North's address and, further, that he had acquired access to Mr. North's home IP address, warning him that he knew Mr. North had opened

---

[4] Like the March 30, 2018 email, Mr. Manookian copied seven other attorneys and staff involved in the case in the June 22, 2018 email.

[5] Ultimately, all matters involving Mr. Manookian personally were transferred from Judge Brothers to Judge Ash.

[6] The trial court also awarded Mr. Gideon his reasonable attorney fees and expenses, directing him to submit an affidavit verifying the costs incurred regarding the June 15, 2018 and July 20, 2018 motions for sanctions against Mr. Manookian.  After receiving Mr. Gideon's affidavit, the trial court, on October 19, 2018, entered an amended order, awarding Mr. Gideon an additional $5,880.00 in attorney's fees.

his prior email from his home computer. He also revealed that he knew the name and maiden name of Mr. North's wife,[7] as well as the make, model, vehicle identification number, and license plate number of her vehicle, which was registered at the address "where my email is being viewed." Mr. Manookian copied all of the attorneys at his own law firm as well as those at North, Pursell & Ramos, PLC—in total twenty individuals. On October 22, 2018, finding that Mr. Manookian "continue[d] to conduct himself in a reckless manner in utter disregard of the Court's directives[,]" Judge Ash granted the motion, suspending Mr. Manookian from the practice of law in the Circuit Courts of Davidson County for an additional 180 days and awarding $11,874.00 in attorney fees to Mr. North.[8]

Prior to the entry of the October 2018 Order, the trial court, on September 28, 2018, had entered an agreed order of voluntary dismissal with prejudice as to Plaintiff's claims against Defendants Dr. Smith and Middle Tennessee Pulmonary Associates, PLLC. Following the entry of the October 2018 Order, the trial court, on November 1, 2018, entered another agreed order of voluntary dismissal with prejudice as to Plaintiff's claims against Defendant HCA Health Services of Tennessee, Inc. The November 1, 2018 agreed order was certified as a final order pursuant to Tennessee Rule of Civil Procedure 54.02. While Plaintiff has elected not to pursue an appeal, his counsel, Mr. Manookian, timely filed an appeal regarding the sanctions imposed against him in the September 2017, September 2018, and October 2018 Orders.

## ISSUE PRESENTED

Mr. Manookian raises three issues for review, restated as follows:

1. Whether the trial court erred in enacting a content-based, vague, and ambiguous prior restraint on speech in its September 2017 Order.
2. Whether the trial court erred and exceeded its authority in broadly prohibiting and enjoining free speech and association in its September 2018 and October 2018 Orders.
3. Whether the trial court erred in awarding attorney's fees in its September 2018 and October 2018 Orders.

As we perceive it, Appellees raise an additional three issues for our review, restated as follows:

---

[7] Additionally, in his reference to Mr. North's current wife, Mr. Manookian sought to embarrass Mr. North with assertions that he had abandoned his minor children and his first wife following their divorce.

[8] The October 2018 Order also precluded Mr. Manookian from: "(1) accepting new clients; (2) discussing anything other than his suspension with current clients; and (3) discussing past or pending cases with the staff and members/associates of his firm."

- 5 -

1. Whether Mr. Manookian's objections to the language in the September 2018 and October 2018 Orders are rendered moot by the Tennessee Supreme Court Order of temporary suspension and the pre-existing rules of court governing the conduct of lawyers under suspension.
2. Whether the October 2018 Order should be considered in full force and effect since the appeal of said order has not been procedurally perfected.
3. Whether Mr. Manookian waived any objections to the September 2017 and September 2018 Orders by failing to timely file a notice of appeal.

## STANDARD OF REVIEW

In non-jury cases, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review the trial court's resolution of questions of law de novo with no presumption of correctness. *See Armbrister*, 414 S.W.3d at 692. "[I]n light of the necessity of recognizing the trial court's inherent authority to control the dockets and the proceedings in their courts[,]" we review the trial court's actions pursuant to such inherent authority under an abuse of discretion standard. *See Vivien v. Campbell*, No. W2009-01602-COA-R3-JV, 2011 WL 1837777, at *8 (Tenn. Ct. App. May 10, 2011); *see also Andrews v. Bible*, 812 S.W.2d 284, 291 (Tenn. 1991).

## DISCUSSION

### A.  The September 2018 and October 2018 Orders

We first address Mr. Manookian's argument that the trial court exceeded its authority in broadly prohibiting and enjoining his speech and association in its September 28, 2018 and October 22, 2018 Orders.

In the September 2018 Order, the trial court suspended Mr. Manookian from the practice of law in the Circuit Courts of Davidson County for 60 days. Specifically, the September 2018 Order stated the following:

> Exercising its inherent authority, this Court suspends Mr. Manookian from the practice of law in the Davidson County, Tennessee Circuit Courts for sixty (60) days. Specifically, with regard to the Davidson County Circuit Courts, he is precluded from: (1) accepting new clients; (2) discussing anything other than his suspension with current clients; (3) appearing in court except where he is a self-represented litigant; and (3) [sic] discussing past or pending cases with the staff and members/associates of his firm.

Accordingly, the September 2018 Order suspended Mr. Manookian from the practice of law in the Circuit Courts of Davidson County until November 27, 2018. As it pertains to its restrictions on Mr. Manookian, the October 2018 Order is nearly identical to the September 2018 Order, except it suspended Mr. Manookian for an additional 180 days, "to run consecutively to the sixty (60) day suspension previously imposed[.]" Accordingly, the October 2018 Order suspended Mr. Manookian from the practice of law in the Circuit Courts of Davidson County until May 26, 2019. On September 21, 2018, however, the Tennessee Supreme Court had entered its Order, suspending Mr. Manookian from the practice of law throughout the state of Tennessee for an indefinite period of time. *See In re Manookian I.* After our review of these orders, we conclude that the September 2018 and October 2018 Orders effectively placed the same restrictions on Mr. Manookian as the Supreme Court Order, although limited to the Circuit Courts of Davidson County, and, thus—as they pertain to such restrictions only—are rendered moot.

As the Tennessee Supreme Court has noted, a moot case is one that "has lost its justiciability either by court decision, acts of the parties, or some other reason occurring after commencement of the case." *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cty.*, 301 S.W.3d 196, 203-04 (Tenn. 2009). Here, in addition to suspending Mr. Manookian from the practice of law for a number of days, the September 2018 and October 2018 orders precluded him from: (1) accepting new clients; (2) discussing anything other than his suspension with current clients; (3) appearing in court except where he is a self-represented litigant; and (4) discussing past or pending cases with the staff and members/associates of his firm. Similarly, the Supreme Court Order provided that Mr. Manookian "shall comply with Tenn. Sup. Ct. R. 9 *in all respects* and particularly as provided in Tenn. Sup. Ct. R. 9, § 28[.]" *In re Manookian I* (emphasis added). A review of Tennessee Supreme Court Rule 9 reveals provisions for restrictions on attorneys similar to those contained in the September 2018 and October 2018 Orders. Tennessee Supreme Court Rule 9 section 28.2 provides that a suspended attorney must notify all of his or her represented clients—as well as all co-counsel and opposing counsel—in pending matters of orders imposing disbarment, suspension, or temporary suspension. *See* Tenn. Sup. Ct. R. 9, § 28.2. Further, Section 28.8 provides the following:

> The respondent attorney shall not undertake any new legal matters on or after the effective date of the order. By no later than twenty days after the effective date of the order, the respondent attorney shall cease to maintain a presence or occupy an office where the practice of law is conducted, except as provided in Section 12.3(c), and shall take such action as is necessary to cause the removal of any indicia of attorney, lawyer, counselor at law, legal assistant, law clerk, or similar title.

- 7 -

*Id.* at § 28.8. Accordingly, because the spirit of September 2018 and October 2018 Orders is effectively identical to that of the Supreme Court Order, we conclude that Mr. Manookian's issues with the restrictions contained in in the Circuit Court orders were rendered moot by those in the latter.

However, after denying two previous petitions from Mr. Manookian, the Tennessee Supreme Court, on May 17, 2019, entered an order granting Mr. Manookian's petition for dissolution of the Supreme Court Order. *See In re Brian Phillip Manookian, BPR #026455*, No. M2019-00630-SC-BAR-BP (Tenn. 2019). This occurred nine days before the October 2018 Order was set to expire on May 26, 2019. To the extent Mr. Manookian takes issue with the effect of the October 2018 Order in these last nine days, we deny Mr. Manookian any relief because this issue, too, is moot. By the terms of the October 2018 Order, Mr. Manookian's suspension from the practice of law in the Circuit Courts of Davidson County expired on May 26, 2019—nearly three months prior to this appeal. Therefore, this Court can provide no relief. We reached a similar conclusion in *State ex rel. Moncier v. Jones*, where an attorney appealed certain conditions of his probation that had since expired:

> Mr. Moncier's probationary period expired June 10, 2012, after which he returned to private practice without a practice monitor condition. Therefore, we are unable to provide any relief for Mr. Moncier regarding this condition of his probation . . . . A case or issue that becomes moot during the course of litigation will be dismissed as moot. *Jacks v. City of Millington Bd. of Zoning*, 298 S.W.3d 163, 175 (Tenn. Ct. App. 2009). The appeal process is part of the course of litigation. *Clark v. Shoaf*, 302 S.W.3d 849, 854 (Tenn. Ct. App. 2008) (citations omitted). Therefore, this issue is moot as there is no relief that this court can provide.

*State ex rel. Moncier v. Jones*, No. M2012-00778-COA-R3-CV, 2013 WL 2492652, at *4 (Tenn. Ct. App. June 6, 2013).

We next address Mr. Manookian's argument that the trial court's awards of attorney's fees in the September 2018 and October 2018 Orders fail to comport with Tennessee law. Specifically, Mr. Manookian contends that the September 2018 and October 2018 Orders "made no factual findings and undertook no analysis as required by Tennessee law to determine the reasonableness, necessity, or even existence of attorneys' fees or charges."

As this Court has stated, "there must be something in the record that would allow us to conclude that there is evidence somewhere to support the award [of attorney's fees] and that the trial court weighed the evidence in light of the applicable law and exercised its discretion with those things in mind." *In re Estate of Campbell*, No. E2011-02765-COA-R3-CV, 2012 WL 3090299, at *6 (Tenn. Ct. App. July 31, 2012). In the September

2018 Order, the trial court awarded Mr. North "reasonable attorney fees" in the amount of $37,164.00, noting that such amount "reflects $36,180.00 in attorney fees (120.6 hours at $300 per hour), plus $984.00 in paralegal charges."[9] The hourly rate and number of hours upon which the award was based is supported by an affidavit, filed by Mr. North on September 17, 2018. In the October 2018 Order, the trial court awarded Mr. North attorney's fees in the amount of $11,874.00, noting that such amount "reflects 38.90 hours at $300 per hour, plus $204.00 in paralegal charges."[10] Again, the hourly rate and number of hours is supported by a separate affidavit, filed by Mr. North on October 15, 2018. We disagree with Mr. Manookian and conclude that the record clearly supports the trial court's award of attorney's fees. Furthermore, while it appears Mr. Manookian is only challenging the *amount* of attorney's fees awarded by the trial court in the September 2018 and October 2018 Orders, to the extent he challenges the *basis* of such awards, the Tennessee Supreme Court has stated the following:

> Completely aside from Rule 11, the courts of this state have, under the inherent power to supervise and control their own proceedings, the authority to sanction attorneys, but only for pursuing matters in bad faith or conducting themselves in a reckless manner. We note in this regard that it has traditionally been the province of the courts to set standards for the bar and that an attorney acts not only as a client's representative, but also as an officer of the court and, accordingly, has a duty to serve both masters.

*Andrews v. Bible*, 812 S.W.2d 284, 291 (Tenn. 1991) (internal citations omitted). The record clearly supports a finding that Mr. Manookian conducted himself in a reckless manner throughout the course of the underlying litigation, and, thus, we conclude that the trial court did not abuse its discretion in exercising its inherent power to sanction him. Accordingly, we deny Mr. Manookian any relief on this issue.

## B. September 2017 Order

Lastly, we address Mr. Manookian's argument that the September 2017 Order enacted an unconstitutional prior restraint on his free speech. Specifically, Mr. Manookian contends that the September 2017 Order "is not narrowly tailored," does not "serve a compelling governmental interest[,]" and is a "broad prohibition on content-based future speech[.]"

---

[9] The September 2018 Order also awarded Mr. Gideon attorney's fees, but directed him to submit an affidavit. Mr. Gideon did so on October 3, 2018, and, on October 19, 2018, the trial court amended the September 2018 Order to include the following language: "Mr. Manookian shall pay to Mr. Gideon $5,880.00 in attorney's fees, which reflects 19.6 hours at $300 per hour."

[10] The October 2018 Order also awarded $1,175.00 in attorney's fees to Mr. Gideon and his office. Such amount is supported by affidavit, filed on October 17, 2018.

The Preamble to the Tennessee Rules of Professional Conduct states that "essential characteristics" of a lawyer include "knowledge of the law, skill in applying the applicable law to the factual context, thoroughness of preparation, practical and prudential wisdom, *ethical conduct and integrity*, and dedication to justice and the public good." Tenn. Sup. Ct. R. 8, RPC Preamble para. 1 (emphasis added). It further provides that a lawyer's conduct

> should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials.

*Id*. at para. 6. Similarly, the Davidson County Local Rules of Practice section 5.04 provides that, with respect to adverse parties and their counsel, a lawyer "will be courteous and civil, both in oral and written communications" and "will not use litigation or any other course of conduct to abuse or harass[.]" Here, the September 2017 Order simply prohibited Mr. Manookian "from making any communication to counsel in this case that threatens, insults, disparages, demeans, or embarrasses them and/or their family members." Inherent to these provisions from the Tennessee Rules of Professional Conduct and the Davidson County Local Rules of Practice is the requirement for attorneys to conduct themselves in an ethical, civil, and professional manner—and implicit in this requirement is the prohibition on conduct that "threatens, insults, disparages, demeans, or embarrasses." "[A] license to practice law in this state is not a right, but a privilege." *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 618 (Tenn. 2010) (citing *Milligan v. Bd. of Prof'l Responsibility*, 301 S.W.3d 619, 629 (Tenn. 2009)). It is the duty of every recipient of that privilege "to act at all times . . . in conformity with the standards imposed upon members of the bar as conditions for the privilege to practice law." *Id*. Furthermore, as the United States Supreme Court has stated, "[o]bedience to ethical precepts may require abstention from what in other circumstances might be constitutionally protected speech." *In re Sawyer*, 360 U.S. 622, 646-47 (1959) (Stewart, J., concurring).[11] We conclude that the September 2017 Order did not enact an unconstitutional prior restraint on Mr. Manookian's speech and, accordingly, deny him any relief on this issue.

---

[11] Indeed, several provisions from the Tennessee Rules of Professional Conduct abridge the otherwise free speech of attorneys. *See, e.g.* Tenn. Sup. Ct. R. 8, RPC 1.6 (restricting what information relating to the representation of a client an attorney can reveal); *Id*. at 3.5 (prohibiting an attorney from communicating *ex parte* with judges, jurors, or other persons absent certain exceptions); *Id*. at 3.6 (prohibiting an attorney from making extrajudicial statements that may prejudice a proceeding); *Id*. at 4.2 (generally prohibiting an attorney from communicating with individuals represented by other counsel); *Id*. at 7.1 - 7.6 (restricting the means and content of attorney advertisements and solicitations).

Our disposition of these matters pretermits the remaining issues raised by Appellees.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed in all respects.

_____

ARNOLD B. GOLDIN, JUDGE